**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**TAMIKA LAWTON, AS MOTHER**
**AND NATURAL GUARDIAN OF J. L., A MINOR**                    **Plaintiff**

  **v.**                                    **CIVIL  ACTION NO. 1:26cv44 LG-RPM**

**THE KRAFT HEINZ COMPANY, MONDELEZ**
**INTERNATIONAL, INC., POST HOLDINGS, INC.,**
**THE COCA-COLA COMPANY, PEPSICO, INC.,**
**GENERAL MILLS, INC., NESTLE USA, INC.,**
**KELLANOVA, WK KELLOGG CO., MARS**
**INCORPORATED, INC., and CONAGRA**
**BRANDS, INC.**                                            **Defendants**

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR**
**STAY OF DISCOVERY AND PROTECTIVE ORDER**

### I.     PRELIMINARY STATEMENT

The present action relates to the consumption of ultra-processed foods ("UPF") which have been identified by world-renowned researchers and scientists as the "leading cause of the diet-related chronic disease pandemic." Baker, et al, *Towards unified global action on ultra-processed foods: understanding commercial determinants, countering corporate power, and mobilizing a public health response*, Lancet, Vol. 4, pp. 2703-2726 (Dec. 6. 2025)(Compl. at ¶ 33, n. 30.) Despite Defendants' claim to the contrary, there is a definition of UPF – a definition that is so well accepted in the medical community that there is voluminous medical literature in peer-reviewed journals relating to UPF, and, particularly, defining UPF the same way Plaintiff has in the Complaint. (*See e.g.* Compl. at ¶¶ 24-25, 33, 117-119, 121-128, 133-134, fns. 1, 4, 30-32, 39-44,

1

47-48, 52-53, 58-63.)[1] Moreover, these researchers and scientists recognize two undeniable truths about UPF. First, it is the UPF industry, inclusive of each Defendant named in Plaintiff's Complaint, that is the key driver of the harm to global health. Second, it is the corporate activities of the UPF industry, inclusive of each Defendant named in Plaintiff's Complaint, that is the main barrier to fixing the harm they have caused. (Compl. at ¶ 33, n. 30.)

The minor-Plaintiff, J.L., suffers from Type 2 diabetes, a very serious, long-term, and potentially life-threatening medical condition, and it is alleged that it was caused by his ingestion of UPF. (Compl. at ¶¶ 4, 8, 22-27, 33-37, 41-45, 105-137, 367-380, 386-389, 494, 590-703, 711, 713, 715-718, 727, 729-733, 742, 746-750, 761-763, 768-771, 774, 776-778, 789, 797-799, 801, 803-804, 823-825, 827-828, 838-841.)  Defendants are UPF manufacturers, who, it is alleged, at all relevant times, knew or should have known of the metabolic health risks associated with UPF, such as Type 2 diabetes, but chose to conceal these health risks from the Plaintiff, the minor-Plaintiff, and the public, and instead engineer their UPF to be addictive and promote overconsumption, all for the sake of profit. (*Id.* at ¶¶4, 11-21, 28, 34, 140-365, 379, 381-385, 390-490, 492, 593, 598-600, 607-608, 617-618, 627-628, 637-638, 647-648, 657-658, 667-668, 677-678, 687-688, 697-698, 706-710, 712, 714, 719, 723-726, 728, 734,  738-746, 748, 751,  756-770, 772-776, 779, 787-790, 792- 797, 800, 802, 805). It is further alleged that five of the named Defendants (the "Conspiracy Defendants") conspired and colluded with each other to maintain and expand the UPF market while at the same time agreeing to conceal and/or omit information

---

[1] UPF are "industrially produced edible substances that are imitations of food. UPF are formulations of, typically, cheap industrial ingredients using a series of industrial processes. These ultra-processed products are not modified foods, but formulations made mostly or entirely of fractionated substances that have undergone hydrolysis, hydrogenation, or other chemical modifications, and contain ingredients that have no or rare culinary use—such as fructose, high-fructose corn syrup, 'fruit juice concentrates', invert sugar, matlodextrin, dextrose, lactose, hydrogenated or interesterfied oils, hydrolyzed proteins, soya protein isolate, gluten, casein, whey protein, 'mechanically separated meat'—and additives such as colors, flavors, flavor enhancers, emulsifiers, emulsifying salts, artificial sweeteners, thickeners, and foaming, anti-foaming, bulking, carbonating, gelling, and glazing agents." (*Id.* at ¶109; *see also* ¶¶6-7, 105-115.)

regarding the dangers of UPF such as Type 2 diabetes.  (*Id.* at ¶¶ 28-33, 534-589, 808-822, 824-826, 831-836, 842.)

The present action is one of several that have been filed in federal courts across the country, in which it is alleged that Defendants' UPF caused, and continues to cause, children and adolescents to suffer from Type 2 diabetes.[2] Most of these actions are in their infancy, including *Martinez v. Kraft Heinz Co., Inc.*, 25-cv-377 (E.D. Pa.)("*Martinez*"), which Defendants rely heavily upon in their Motion for Stay of Discovery and Protective Order ("motion to stay") [ECF Nos. 92, 93.] and in their contemporaneously filed Omnibus Motion to Dismiss Plaintiff's Complaint ("motion to dismiss") [ECF Nos. 94, 95]. A motion to amend the pleadings is fully briefed in *Martinez* and ripe for decision.[3]  It is anticipated that many more actions will be filed in federal courts across the country in the near future.

In short, these actions are about an industry that profits from selling highly addictive products that cause serious and signature diseases in children and adolescents, while at the same time denying these facts to the public, the government and the public health community.

With the filing of both their motions here, Defendants are continuing with their typical industry tactics, particularly of delay.  Defendants have filed a motion to dismiss even though they

---

[2] A government action filed in California State Court against these same Defendants does not limit its allegations to children and adolescents. *The People of the State of California v. Kraft Heinz Company, et al.*, Case No: CGC-25-631189, San Francisco Superior Court.

[3] The *Martinez* action was filed in Pennsylvania state court in December 2024 against these same Defendants, and, after removal to the Eastern District of Pennsylvania and Rule 12(b)(6) motion practice, dismissed due to pleading deficiencies, not because Plaintiff could never state a cause of action against Defendants.  *Martinez*, 2025 U.S. Dist. LEXIS 164054 (E.D. Pa. Aug. 25, 2025). Currently, there is a pending motion to amend the complaint that has been fully briefed for almost six months, since November 13, 2025, and because the plaintiff there was never given the opportunity to amend his complaint, it would be unusual if the motion to amend was not granted.  Additionally, as discussed further herein, Plaintiff filed her Complaint *after* the decision dismissing the *Martinez* action was entered, and, although Plaintiff disagreed with the decision, Plaintiff specifically drafted her Complaint to address the deficiencies the Court identified in the *Martinez* decision.  Thus, her Complaint is not "virtually identical" to the Complaint in *Martinez* as Defendants so claim. (Def. Br. at p. 2.)

are well aware of and have fair notice of the claims Plaintiff has asserted against them as required by Fed. R. Civ. Pr. 8(a), and even though Plaintiff has pled her fraud claims with the particularity required by Fed. R. Civ. Pr. 9(b). They have filed a motion to stay with the goal of ensuring that, even if they lose their motion to dismiss (which Plaintiff submits they will), discovery will be delayed until the last possible moment. This is the true reason why Defendants do not want to agree to the very limited discovery proposed by Plaintiff as discussed further herein – Plaintiff's proposal would hasten the inevitable discovery they do not want to produce.

## II.    INTRODUCTION

Defendants ask this Court to impose a complete stay on all discovery while their motion to dismiss is pending. Plaintiff disagrees that any stay of proceedings, let alone a complete stay, is warranted.

Nonetheless, Plaintiff has attempted to compromise by agreeing to a stay of a majority of discovery except for three non-burdensome items: (1) the service of initial disclosures; (2) the drafting and negotiation of certain foundational orders (a Confidentiality Order, a Privilege Order, a Preservation Order and an Order Establishing a Protocol for Producing Documents and Electronically Stored Information); and (3) the *voluntary* service of initial discovery demands without the need for the other party to respond, until after the motion to dismiss is decided upon ("the limited discovery actions"). Importantly, not only is the third item optional for each party, it also does not require that either party begin drafting responses to the discovery demands before the decision is entered, as Defendants so claim. Def. Br. at p. 8.

As set forth in Plaintiff's letter to the Court dated April 21, 2026, [ECF No. 92-1], Plaintiff's proposed compromise is intended to be "fair, reasonable and equitable because it would allow preliminary matters regarding discovery to take place so that when Defendants' motion is

4

ultimately decided (which Plaintiff submits will be in her favor), the parties can hit the ground running when it comes to discovery…[while also] address[ing] the concerns of Defendants (who desire the Court to decide in their favor), from having to engage in voluminous and expensive discovery until their motion is decided..." *Id*. at p. 2. Stated otherwise, Plaintiff's proposal seeks to strike a balance between limiting the prejudice to Plaintiff of a prolonged discovery stay by allowing the limited discovery actions to take place while likewise minimizing the scope and expense of merits discovery to Defendants. Defendants have repeatedly rejected Plaintiffs' proposal, instead choosing to promote delay with their request for a complete stay of all discovery.

The Court should deny Defendants' motion and instead adopt Plaintiff's proposal because good cause does not exist to impose a complete stay given that Plaintiff's Complaint will undoubtedly survive Defendants' motion to dismiss, and a complete stay would greatly prejudice Plaintiff Tamika Lawton and, particularly, her minor son J.L. by delaying justice for him through a protracted and complex motion to dismiss briefing period. Moreover, given the nature of the limited discovery actions proposed by Plaintiff, Defendants' arguments concerning enormous burden and expense are not well taken. Allowing the limited discovery actions to proceed would best promote judicial economy by ensuring the parties can begin merits discovery as soon as the motion to dismiss is resolved.

Defendants make three arguments in support of their request for a stay. First, they contend no discovery is needed to rule on Defendants' pending motion to dismiss, and, like the *Martinez* Complaint, Plaintiff's Complaint here will be dismissed based on the same legal challenges raised in *Martinez*. Def. Br. at p. 6. Second, Defendants argue such a dismissal *may* then obviate the need for discovery because it *may* dispose of the entire case. Finally, they argue if any of the case remains following the disposition of the motion to dismiss, there will be no burden to Plaintiff

resulting from the stay while there will be immense burden and expense to Defendants without the stay. *Id*. at pp. 6-8.

As set forth below, each of these arguments fails scrutiny, and thus, the Court should deny Defendants' Motion to Stay, and allow Plaintiff's proposed limited discovery actions to commence, so that when the motion to dismiss is resolved (Plaintiffs submit in their favor), the parties will not face even more delay undertaking these preliminary efforts, which can be completed now.

### III.    FACTUAL AND PROCEDURAL BACKGROUND

On February 12, 2026, Plaintiff Tamika Lawton filed this action on behalf of her minor son J.L., who has been diagnosed with Type 2 diabetes allegedly caused by his long-term consumption of UPF manufactured and marketed by the Defendants. Plaintiff's well-pled Complaint contains nearly 850 paragraphs and details, among other things: (1) how to define UPF and the acceptance of this definition by scientists and researchers across the globe; (2) the scientific and epidemiological evidence causally linking UPF to type 2 diabetes; (3) how addiction science permeates the UPF industry; (4) how each Defendant separately targeted children to market their respective UPF; (5) how certain Defendants conspired and colluded with each other to maintain and expand the UPF market while at the same time agreeing to conceal and/or omit information regarding the dangers of UPF such as Type 2 diabetes; (6) which UPF products J.L. consumed, when and how often; (7) J.L.'s resulting injuries; and (8) that J.L. would not have started ingesting and/or using UPF had he known of their addictiveness and the increased risk of Type 2 diabetes associated therewith.

Notably, Plaintiff's Complaint was filed *after* the Court issued its decision dismissing the *Martinez* action on August 25, 2025. This is relevant because, although Plaintiff respectfully

disagrees with the Court's holding in *Martinez*, Plaintiff was aware of the Order and specifically drafted her Complaint to add the factual allegations the Court claimed were lacking in *Martinez*. For example, Plaintiff's Complaint contains over 160 plaintiff-specific allegations, compared to the nine identified by the Court in *Martinez*, including allegations regarding: (1) which UPF the minor-Plaintiff consumed; (2) which manufacturers were responsible for the particular UPF the minor-Plaintiff consumed; (3) when and how often the minor-Plaintiff consumed each Defendants' respective UPF; (4) the date of the minor-Plaintiff's diagnosis of Type 2 diabetes; (5) how long the minor-Plaintiff had consumed Defendant's respective UPF before being diagnosed with Type 2 diabetes; and (6) there being no other plausible explanation, such as lack of exercise, genetics, non-UPF or any combination thereof, for the minor-Plaintiff's Type 2 diabetes other than UPF. (Compl. at ¶¶ 4, 34, 35-37, 41-45, 590-703, 711, 713, 715, 717-718, 727, 729-733, 742, 746-750, 761-763, 768-771, 774, 776-778, 789, 797-799, 801, 803-804, 823-825, 827-828, 838-841).

Following service of Plaintiff's Complaint, in discussions with Plaintiff's counsel regarding the motion to dismiss briefing schedule, Defendants requested that all discovery be deferred until after resolution of the motion to dismiss. On March 10, 2026, Plaintiff advised Defendants that she would not agree to a complete stay of discovery. Nonetheless, in an attempt at compromise, on March 12, 2026, Plaintiff proposed that only the limited discovery actions take place while Defendants' motion to dismiss is pending. Again, the purpose of the compromise was to strike a balance between the competing positions of both parties.[4]

After not hearing back from Defendants regarding the proposal for over two weeks, Plaintiff's counsel followed up with Defendants on April 1, 2026, asking for their position. On

---

[4] Defendants claim that Plaintiff initially proposed that only a protective order and ESI protocol for electronic discovery be negotiated. That is an inaccurate statement. Plaintiff proposed that certain foundational orders be negotiated and provided the protective order and ESI protocol for electronic discovery as examples to which she was referring.

April 7, 2026, Defendants responded that they would not agree to the proposal because it would "defeat" what they believed to be "the very purpose and benefit of maintaining the status quo." Following letter briefing to the Court, *see* Plaintiff's letter to the Court dated April 21, 2026, [ECF No. 92-1], and Defendants' letter dated April 23, 2026 [ECF No. 92-2], and at the direction of the Court, on May 1, 2026, Defendants filed the present motion to stay, the same day as their motion to dismiss.

Defendants' motion to dismiss raises a multitude of legal arguments which Plaintiff submits should be rejected, primarily because Defendants attempt to impose a heightened pleading standard not contemplated by the Federal Rules of Civil Procedure.  Once rejected, this case will be left fully intact and in need of immediate, comprehensive discovery. Plaintiff's opposition is to the motion to dismiss is due June 1, 2026, with Defendants' reply due on June 23, 2026. To ensure the parties are not further delayed at this juncture, Plaintiff submits that the Court should allow her proposed limited discovery actions to proceed during the pendency of the motion to dismiss. Contrary to what Defendants argue in their motion to stay, allowing the limited discovery actions to take place will promote judicial economy by minimizing any additional discovery delay once the motion to dismiss is resolved.

## IV.    ARGUMENT

**A.    Whether to Impose a Stay is in the Court's Discretion and the Court Should Not Exercise that Discretion Where Good Cause to Do So Does Not Exist.**

"Trial courts possess broad discretion to supervise discovery." *Young v. State Farm Fire & Cas. Co.*, 2025 U.S. Dist. LEXIS 92690, \*4 (quoting *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 426 n.114 (5th Cir. 1990)). "A court's discretion to stay discovery pending a ruling on a preliminary motion seeking dismissal is based on Federal Rule of Civil Procedure 26(c), which provides that courts 'may, for good cause, issue an order to protect a party or person

from annoyance, embarrassment, oppression, or undue burden or expense.'" *Id.* (citing Fed. R. Civ. P. 26(c)). "When considering whether good cause exists under Federal Rule of Civil Procedure 26(c) to stay discovery due to the filing of a dispositive motion, courts consider, among other things, 'the strength of the dispositive motion filed by the party seeking the stay.'" *Harris v. DeSoto Cnty.*, 2025 U.S. Dist. LEXIS 11191, *6 (N.D. Miss. Jan. 22, 2025)(quoting *Moore v. North Bolivar Consolidated School District*, 2023 U.S. Dist. LEXIS 131962, at *3 (N.D. Miss. July 31, 2023)). A court likewise has inherent authority to stay discovery. *Petrus v. Bown*, 833 F.2d 581, 583 (5th Cir. 1987).

"Although the court possesses authority to stay discovery pending a ruling on a motion to dismiss, 'the issuance of [a] stay is by no means automatic.'" *Dyess v. Entergy Miss., LLC,* 2025 U.S. Dist. LEXIS 168784, *3 (S.D. Miss. Aug. 29, 2025) (quoting *Von Drake v. Nat'l Broad. Co., Inc.*, 2004 U.S. Dist. LEXIS 25090, at *3 (N.D. Tex. May 20, 2004)). "Rather, the decision 'is committed to the sound discretion of the trial court.'" *Id*. (citing *Smith v. Potter*, 400 F. App'x 806, 813 (5th Cir. 2010)) (citations omitted). In fact, "'[s]uch a stay is the exception rather than the rule.'" *Id*. (quoting *Young,* 2025 U.S. Dist. LEXIS 92690, at *5 (S.D. Miss. May 15, 2025)); *see also*, *Ford Motor Co. v. United States Auto Club*, 2008 U.S. Dist. LEXIS 34240, at *2 (N.D. Tex. Apr. 24, 2008); *Knoth v. SW Miss. Reg'l Med. Ctr.*, 2019 U.S. Dist. LEXIS 204287, at *3 (S.D. Miss. Aug. 9, 2019). "'While, in theory, a court may find good cause to stay discovery when there is a pending 12(b)(6) motion, in practice such stays are very rare, and almost never wise.'" *Harris*, 2025 U.S. Dist. LEXIS 11191, *9-10 (quoting *YETI Coolers, LLC v. Magnum Solace, LLC*, 2016 U.S. Dist. LEXIS 144473, at *3 (W.D. Tex. Oct. 19, 2016)).

In deciding whether to grant a motion to stay, courts in the Fifth Circuit and this District exercise their discretion to stay discovery by considering: (1) whether the pending motion is

9

potentially dispositive of the entire case; (2) whether the motion can be decided without additional discovery; and (3) whether a stay will prejudice the non-moving party. *See, e.g., Dyess,* 2025 U.S. Dist. LEXIS 168784, *2, *4-5 (S.D. Miss. Aug. 29, 2025). Each of these factors must be considered and none of them clearly weighs in favor of a complete stay.

In addition, "'…when deciding whether a stay of the proceedings is appropriate, [courts] may consider the following factors: "1) hardship and inequity on the moving party without a stay… and 3) judicial economy.'" *Arch Ins. Co. v. Clark Constr., Inc.*, 2023 U.S. Dist. LEXIS 57930, *3-4 (S.D. Miss. Apr. 23, 2023)(citations omitted).

In short, courts do not impose a stay of discovery simply because a motion to dismiss has been filed. Rather, multiple factors are weighed in deciding whether to allow discovery to procced, including the relative merits of the underlying substantive motion, and, where, as here, only specific limited discovery actions are proposed, arguments concerning burden and expensive should carry little weight.

**B.      Good Cause to Impose a Stay Does Not Exist as Plaintiff Has Pled Plausible Claims, Therefore, Defendants' Motion to Dismiss is Not Likely to Dispose of the Entire Case.**

Defendants argue that their motion to dismiss raises "foundational legal challenges that are apparent on the face of the Complaint and do not require factual development," and, if granted, would dispose of the case. Def. Br. at pp. 6-7. Specifically, Defendants argue that Plaintiff's Complaint is a shotgun pleading that does not distinguish between each Defendants' foods, beverages, or alleged marketing tactics, does not properly identify brands or the specific foods J.L. consumed, and does not allege general or specific causation. *Id*. As set forth below, this is wrong.

In support of this argument, Defendnats rely heavily on *Martinez*, 2025 U.S. Dist. LEXIS 164054, which is both non-binding and distinguishable.  Indeed, as Plaintiff set forth above, this decision had been entered *before* she filed her Complaint, and she drafted her Complaint to include

the allegations that the Court in *Martinez* found lacking. This Court must evaluate Plaintiff's

Complaint under the law of this Circuit, and a thorough investigation of Plaintiff's more detailed

and specific Complaint will reveal that it is well pled and comports with the pleading standards set

forth under the paradigm pleading Supreme Court cases of *Bell Atl. Corp. v. Twombly*, 127 S.Ct.

1955 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), and does not "run contrary to Rule 8's

basic pleading requirements and work an undue burden on Defendants." *Martinez*, 2025 U.S. Dist.

LEXIS 164054, at * 14.[5] As such, because the Defendants' underlying dispositive motion is not

likely to succeed, good cause does not exist to impose a stay.

Even assuming *arguendo* that the Court were to grant some aspect of Defendants' motion

to dismiss, it is not likely that it would dismiss all seven causes of action against all Defendants,

which would leave claims pending against certain Defendants. A stay of discovery would have

hence been unnecessarily delayed.

---

[5] Contrary to what Defendants argue in their briefs, and as Plaintiff will argue in her Opposition to Defendants' motion to dismiss, Plaintiffs allegations are sufficient in this Circuit to provide each Defendant fair notice of the claims against them. *See e.g. Franklin v. Intuitive Surgical Operations, Inc.*, 2025 U.S. Dist. LEXIS 45755 (S.D. Miss. Mar. 13, 2025)(quoting *Lindsay v. United States*, 4 F.4th 292, 294 (5th Cir. 2021))(rejecting the defendants' argument that a products liability complaint was a shotgun pleading finding that under "the deferential standard for resolving motions under Rule 12(b)(6)", the plaintiffs had pled 'sufficient factual matter, if accepted as true, to state a claim to relief that [was] plausible on its face[,]'"); *see also Singleton v. Chevron United States, Inc.*, 835 F. Supp. 2d 144, 148 (E.D. La. 2011)(quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)("Plaintiffs have sufficiently plead enough facts to give Defendant Valspar fair notice of the claims against it. The mere fact that Mr. Singleton does not yet point to a specific Valspar product and specific dates of exposure does not make the claim implausible under *Iqbal*. At the pleading stage, a plaintiff is not expected, nor in most cases is he able, to articulate a claim's precise factual contours that may only later be elicited through discovery. The complaint alleges that Valspar manufactured certain plastic primers, paints and thinners. It need not further give 'brand name' or other specific information pertaining to these products. Taken collectively, the allegations that Valspar manufactured certain classes of products, that these products contained benzene, that benzene causes myeloma, and that Valspar knew or should have known based on available industry research of the dangers of myeloma, taken collectively, allow the Court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'"); *Moore v. BASF Corp.*, 2011 U.S. Dist. LEXIS 134848, at *15-18 (E.D. La. Nov. 21, 2011)(virtually identical holding to *Singleton* but also finding that the plaintiff's allegations that his injury was caused by his exposure to more than one product manufactured by different defendants were proper at the pleading stage because the law allowed for the plaintiff to prove that each defendant's conduct was a substantial factor generating plaintiff's harm).

Finally, because the underlying merits of Defendants' dispositive motion are weak, it is not likely the case will be disposed of and the need for discovery obviated. Not only is it entirely speculative to argue that the need for discovery will be obviated (or greatly narrowed) by the resolution of Defendants' motion to dismiss, the well-pled Complaint suggests the opposite, *i.e.*, that Defendants' motion to dismiss will be denied and merits discovery will commence.

## C.    **A Stay Prejudices Plaintiffs and Delays Justice for a Minor Child.**

Defendants brush off any prejudice concerns claiming there is no specific prejudice at play. However, not only would a stay "delay this action, and the Court and the parties have an interest in moving the case forward," *Young*, No. 2:23-CV-175-KS-MTP, 2025 U.S. Dist. LEXIS 92690, at *6 (S.D. Miss. May 15, 2025)), this stay has the potential to be quite lengthy. The motion to dismiss was only filed two weeks ago, and as the Defendants themselves argue "raises foundational legal challenges,"[6] that are extremely complex, including, *inter alia*, whether Plaintiff's claims are preempted by federal law, whether the claims are barred by the First Amendment as well as jurisdictional challenges and for claim-specific reasons. These issues require significant consideration and could result in a lengthy motion to dismiss period.  Of course, at its core, Plaintiff has filed a products liability and fraudulent conduct lawsuit.[7]

While the Court is considering these issues, Plaintiff merely requests that the most preliminary steps be taken to negotiate certain foundational orders, and allow for initial disclosures to be produced along with voluntary service of initial discovery demands should a party so desire. Again, Plaintiff's proposal does not require that Defendants' respond to the discovery, or even

---

[6] Def. Br. at p. 6.

[7] While the UPF industry feels it is under attack and is throwing everything at Plaintiff in its initial defense, the standard for a motion to dismiss is not one where a dismissal will likely be upheld on the outlandish kitchen sink arguments that Defendants have thrown at Plaintiff.

begin drafting their responses to discovery, before the Court issues a decision on Defendants' motion to dismiss.

Allowing these limited discovery actions to be taken will lessen the potential prejudice to Plaintiff by ensuring that once the motion to dismiss is resolved, the parties will be able to move forward with discovery without delay. This is not akin to engaging in full blown merits discovery; these limited discovery actions are intended to lessen the prejudice to Plaintiff of the delay brought about by Defendants' filing of a motion to dismiss.

Evidence preservation is likewise a concern when a case is stayed. Employees with relevant knowledge and/or information may leave companies and people's memories and recollections become less reliable over time. Any delay in litigation increases the likelihood of such scenarios. This is especially true when you are dealing with large corporations with many employees as is the case here. And although Defendants have a duty to preserve relevant evidence, the best way to ensure the preservation of evidence is the entry of a formal preservation order, which Defendants are refusing to even negotiate, which underscores Plaintiff's concerns relating to evidence preservation.

Defendants' reliance on *Metcalfe v. Miss. State Senate*, 3:25-CV-324-HTW-ASH, 2025 U.S. Dist. LEXIS 172271 (S.D. Miss. Sept. 4, 2025), in support of their position that an absolute stay is warranted is misplaced. In *Metcalfe*, although the Court did suspend "the parties' disclosure obligations," the procedural context of the case weighed heavily in the court's decision-making. *Id*. at * 6. In *Metcalfe,* the Plaintiff herself was dilatory in her own efforts to bring a timely lawsuit, and because she had already caused significant delay, the court reasoned a short further delay would not prejudice her. That is not the case here; Plaintiff has not been dilatory in her efforts to obtain justice in this case. Rather, the opposite is true. Plaintiff is trying to ensure that the case is

prepped and ready to litigate as soon as the motion to dismiss is resolved. Defendants likewise rely

on *Dyess,* 2025 U.S. Dist. LEXIS 168784, which is equally inapposite as the plaintiff in its

argument there did not outline the specific limited discovery that he was seeking.[8][9] Here, by

contrast, Defendants cannot plausibly claim Plaintiff's proposed limited discovery actions would

cause undue burden, as discussed below.

**D.    Defendants Vastly Exaggerate Any Purported Burden on Them to Engage in the Preliminary Discovery Actions Plaintiff Has Proposed and Judicial Economy Militates Against a Complete Stay.**

Plaintiff proposes that during the pendency of the motion to dismiss the parties engage in

three limited discovery actions.

1) The negotiation and finalization of certain foundational orders including a Confidentiality Order, a Privilege Order, and an Order Establishing a Protocol for Producing Documents and Electronically Stored Information.

2) The service of serve Rule 26 (a)(1) disclosures.

3) The voluntary service of initial discovery demands by either party with no obligation to respond to the discovery demands until after the Defendants' omnibus motion to dismiss has been ruled upon by the Court.[10]

Defendants argue that requiring them to participate in ***any*** discovery, including the above

limited discovery actions, would impose "enormous expense and burden," and cause "substantial

prejudice." Def. Br. at p. 8. Respectfully, Defendants greatly overstate what the above three items

actually contemplate the parties undertaking. Number one above does not even involve actual

---

[8] Pl's Resp. to Def.'s Mtn. to Stay Proceedings at p. 6, No. 3:25-cv-326 (S.D. Miss. Aug. 11, 2025), ECF No. 17.

[9] Defendants also inaccurately assert that in *Huang v. Huang*, 846 F. App'x 224, 233 (5th Cir. 2021), the Fifth Circuit rejected an argument by an Appellant that a district improperly stayed preliminary discovery, initial disclosures and the entry of a protective order. Def. Br. at p. 8. Contrary to what Defendants state, in *Huang* the Fifth Circuit declined to even consider this argument by the Appellant; thus, *Huang* certainly does not stand for the proposition that such an argument was rejected by the Fifth Circuit and to state otherwise is plainly wrong.

[10] Letter to Court dated April 21, 2026, from Plaintiff's Counsel [ECF No. 92-1].

discovery but rather allows the parties to be in position to conduct discovery once the motion to dismiss is resolved, which eliminates any further delay beyond the motion to dismiss briefing.

Negotiating and entering into ESI orders, confidentiality orders, and preservation orders are commonplace in complex litigation and routinely are only modified slightly from prior versions of these orders used in like cases. Plainly, negotiating these documents is simply not a heavy lift and certainly does not require "enormous expense and burden" that would cause substantial prejudice. This is likewise true of number two above, initial disclosures, that are required because they give basic information in a way that streamlines discovery without requiring the involvement of lengthy time-consuming discovery requests. Finally, number three is optional only indicating that the parties *may* serve initial discovery demands without any need for either party to respond, or even draft responses, to such discovery until the motion to dismiss is resolved. Certainly, if an optional undertaking is too burdensome for Defendants, then they can opt not to serve their initial discovery until a later date.

In short, the argument that Plaintiff's proposed limited discovery actions are too expensive and burdensome is a red herring. Conversely, if there is zero discovery activity while the motion to dismiss is pending, Plaintiff is prejudiced by significantly further delay. Finally, allowing the limited discovery actions to be conducted also promotes judicial economy by ensuring that the parties are ready to proceed efficiently following the resolution of the motion to dismiss.

Defendants' reliance on *Dowdy & Dowdy P'Ship v. Arbitron Inc.*, No. 2:09-cv-253-KS-MTP, 2010 U.S. Dist. LEXIS 108798 (S.D. Miss. Sept. 30, 2010), for the proposition that conducting any discovery would cause substantial prejudice is misplaced. *Dowdy* is patently distinguishable. For one, there was no opposition to defendants' motion to stay. Two, the plaintiff there did not propose limited discovery as is the case here. Finally, the *Dowdy* court was clearly

15

of the impression that plaintiff's complaint did meet the pleading standards under *Twombly*. Again, as set forth above, that is not the case here where Plaintiff has filed a well-pled Complaint that addressed the pleading deficiencies identified by the Court in *Martinez*. Defendants' argument that engaging in the limited discovery actions will cause unfairness, undue burden and expense should be rejected.

**E.    Local Rule 16 Allows the Court Discretion to Permit Any Aspect of the Case to Proceed During the Pendency of a Motion to Dismiss, Including on Jurisdictional <u>Grounds</u>.**

Local Rule 16 states in relevant part that a motion asserting "a jurisdictional defense, must be raised by separate motion as expeditiously as possible after service of process." L.U. Civ. R. 16(b)(3)(A). It further states that a motion asserting a jurisdictional defense, stays the attorney conference and disclosure requirements and all discovery…" L.U. Civ. R. 16(b)(3)(B). Finally, and importantly, however, the Rule makes clear that the Court has full discretion as to whether to allow discovery on issues related to the motion or ***any portion of the case to proceed during the pendency of the motion***. *Id*. (emphasis added).

First, even assuming the automatic stay does apply to Defendants Mondelez International, Inc. ("Mondelez") and Post Holdings, Inc., a complete stay is not appropriate as Plaintiff may move to obtain jurisdictional discovery with respect to these two Defendants, which is explicitly permitted by the Local Rule.  By way of example, Plaintiff has obtained information from a government website that places Defendant Mondelez at a corporate address of 160 Interstate Dr., Richland, MS 39218, in or about the 2014 timeframe which is when the minor-Plaintiff was consuming this Defendant's UPF. Discovery related to this address may be necessary on issues related to Mondelez's motion.

16

Second, the automatic stay does not apply to the Fed. R. Civ. 12(b)(6) motions made by the other nine named Defendants, but rather only to the two that raised the jurisdictional arguments under Fed. R. Civ. 12(b)(2). *See e.g.*, *Langford v. Milhorn*, 2026 U.S. LEXIS 9323 (N.D. Miss. Jan. 16, 2026)(declining to stay the case during the pendency of the Rule 12(b)(6) motions but permitting it with respect to the jurisdictional motions under Fed. R. Civ. 12(b)(2)). The other nine Defendants should not receive a benefit because two of the Defendants raised jurisdictional challenges when their motion to dismiss does not include such a challenge.

Finally, and importantly, the Local Rule explicitly vests the Court with authority to "permit any portion of the case to proceed pending resolution of the [jurisdictional] motion." L.U. Civ. R. 16(b)(3)(B). As such, the Court has the authority to order the limited discovery actions proposed by the Plaintiff to be undertaken even while the jurisdictional motions are being resolved, which again involves only negotiating foundational aspects of the case, not engaging in full blown merits discovery. The Court should exercise this discretion and allow Plaintiff's proposed preliminary discovery actions to be undertaken.

**F.    For the Same Reasons the Court Should Not Exercise Its Inherent Authority to Impose a Stay, the Court Should Not Impose a Stay Based on Federal Rule 26(c).**

The Court has authority to impose a stay "based on Federal Rule of Civil Procedure 26(c)." *Dowdy*, 2010 U.S. Dist. LEXIS 108798, *4. "Rule 26(c) provides that the court, 'may, for good cause shown, issue an order to protect a party or person from . . . undue burden or expense.'" *Id.* (quoting Fed. R Civ. P. 26(c)). "Good cause may be shown where a party has filed a dispositive motion, the stay is for a short period of time, and the opposing party will not be prejudiced." *Id.* (quoting *Spencer Trask Software and In'l Servs., LLC v. Rpost Int'l Lim.,* 206 F.RD. 367, 368 (S.D.N.Y. 2002)).

Given the complex legal issues raised in the motion to dismiss, it may be some time before the motion to dismiss is resolved, and, thus, the stay may not be for a short period of time. Moreover, as discussed above, there is prejudice to a minor Plaintiff resulting from a prolonged stay, including the potential for preservation of evidence of issues. Finally, given that the motion to dismiss is unlikely to be meritorious and, therefore, will not dispose of the case, good cause does not exist to impose a stay. As such, the Court should decline to exercise its authority under Fed. R. Civ. P. 26(c) to impose a complete stay in this case.

## V.    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion for Stay of Discovery and Protective Order and permit Plaintiff's proposed limited discovery actions that are set forth herein to proceed.

Dated: May 15, 2026.

Respectfully submitted,

*/s/ Jim Reeves*
Jim Reeves, Esquire
MS Bar No. 9519
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS   39530
(228) 374-5151 (telephone)
(228) 374-6630 (facsimile)
jrr@rmlawcall.com (email)

Virginia E. Anello
Douglas & London, P.C.
*Admitted Pro Hac Vice*
935 Gravier St, Suite 2120
New Orleans, LA 70112
Ph: (212) 566-7500
Fax: (212) 566-7501
Email: vanello@douglasandlondon.com

18

Michael A. London
Douglas & London, P.C.
*Admitted Pro Hac Vice*
One State St, 35th Floor
New York, NY 10004
Ph: (212) 566-7500
Fax: (212) 566-7501
Email: mlondon@douglasandlondon.com
Counsel for Plaintiff Tamika Lawton, as Mother a
and Natural Guardian of J.L., A Minor

19

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2026, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which provided notification of such filing to all Counsel of Record.

/s/ Jim Reeves

Jim Reeves, Esquire
MS Bar No. 9519
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS   39530
(228) 374-5151 (telephone)
(228) 374-6630 (facsimile)
jrr@rmlawcall.com (email)