**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**TAMIKA LAWTON, AS MOTHER
AND NATURAL GUARDIAN OF J. L., A MINOR**                              **Plaintiff**


  **v.**                                                  **CIVIL ACTION NO. 1:26cv44 LG-RPM**


**THE KRAFT HEINZ COMPANY, MONDELEZ
INTERNATIONAL, INC., POST HOLDINGS, INC.,
THE COCA-COLA COMPANY, PEPSICO, INC.,
GENERAL MILLS, INC., NESTLE USA, INC.,
KELLANOVA, WK KELLOGG CO., MARS
INCORPORATED, INC., and CONAGRA
BRANDS, INC.**                                                        **Defendants**

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
<u>DEFENDANTS' OMNIBUS MOTION TO DISMISS</u>**

# **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................................1

II.  STATEMENT OF FACTS ...................................................................................................4

    A.  The Definition of UPF – The NOVA Classification............................................................4

    B.  The Negative Health Consequences of UPF ....................................................................5

    C.  Plaintiff's Allegations as to His UPF Use, Injuries and Specific Causation ....................7

III. LEGAL STANDARD ..........................................................................................................8

IV. ARGUMENT ......................................................................................................................10

    A.  Plaintiff Has Sufficiently Identified the UPF that J.L. Ingested so as to Provide Each
        Defendant with Fair Notice of the Claims Against Them...................................................10

    B.  Plaintiff Has Sufficiently Pled Proximate Cause ...............................................................12

        1. Plaintiff Has Sufficiently Pled General Causation............................................................12

        2. Plaintiff Has Sufficiently Pled Specific Causation ..........................................................15

    C.  Plaintiff's Complaint is Not a Shotgun Pleading................................................................17

    D.  Plaintiff's Has Sufficiently Plead Her Failure to Warn Claim under the MPLA...............19

        1. Defendants have a Duty to Warn .......................................................................................19

        2. Plaintiff Has Sufficiently Alleged Proximate Causation...................................................22

    E.  Plaintiff Has Sufficiently Pled a Cause of Action for Defective Design ...........................23

    F.  Plaintiff's Non-MPLA Claims are Not Subsumed by the MPLA.......................................25

    G.  Plaintiff's Deceptive Advertising, Fraud, and Negligent Misrepresentation Claims Are
        Each Sufficiently Pled.........................................................................................................26

    H.  Plaintiff Has Sufficiently Plead Conspiracy and Aiding and Abetting ..............................32

    I.   Plaintiffs' Claims Do Not Violate the First Amendment ...................................................35

J.  Plaintiff's Claims Are Not Preempted by Federal Law ....................................................37

   1. Defendants' Preemption Arguments are Premature ......................................................37

   2. Legal Framework for Preemption..................................................................................38

   3. USDA Preemption Does Not Bar Plaintiff's Claims ....................................................39

      a. Neither of the Acts Preempts Plaintiff's Labeling Claims.........................................39

      b. Neither of the Acts Preempts Plaintiff's Claims Unrelated to the Label...................42

      c. There is No Federal Requirement that Mandate Defendants Sell UPF .....................43

   4. The FDCA and NLEA Do Not Expressly Preempt Plaintiff's Claims ..........................44

L. This Court Has Personal Jurisdiction Over Defendant MII ................................................46

V. CONCLUSION .......................................................................................................................50

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Global Tel Link Corp.*, 2018 U.S. Dist. LEXIS119782 (S.D.Miss. Jul. 18, 2018) . 19

*Am. Bev. Ass'n v. Paxton*, 2026 LX 31333 (W.D. Tex. Feb. 11, 2026).......................................... 37

*Andrews v. Dairy Farmers of Am., Inc.,* 2011 U.S. Dist. LEXIS 130109 (S.D. Miss. Nov. 9, 2011) ................................................................................................................................. 15

*Animal Legal Def. Fund v. Hormel Foods Corp.*, 258 A.3d 174 (D.C. App. 2021) .................... 43

*Arnona v. Smith*, 749 So.2d 63 (Miss. 1999)................................................................................. 29

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 8, 9, 11, 23

*Ass'n des Eleveurs de Canards v. Becerra*, 870 F.3d 1140 (9th Cir. 2017) ................................. 43

*Austin v. Bayer Pharms. Corp.*, 2013 U.S. Dist. LEXIS 137480 (S.D. Miss. Sept. 25, 2013)..... 24

*Bates v. Dow Agrosciences,* LLC, 544 U.S. 431 (2005)............................................. 38, 40, 41, 44

*BC's Heating & Air & Sheet Metal Works, Inc. v. Vermeer Mfg. Co.*, 2012 U.S. Dist. LEXIS 24420 (S.D. Miss. Feb. 27, 2012)...................................................................................... 27

*Becerra v. Coca-Cola*, 2018 U.S. Dist. LEXIS 31870 (N.D. Cal. Feb. 27, 2018) ....................... 14

*Becerra v. Dr Pepper/Seven Up, Inc.,* 2018 U.S. Dist. LEXIS 142074 (N.D. Cal. Aug. 21, 2018) ........................................................................................................................................... 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)........................................................ 8, 9, 27

*Boyd v. Cleara, L.L.C.*, No. 2025 LX 236401 (5th Cir. 2025) ...................................................... 46

*Bradley v. Kelley Bros. Contractors, Inc*, 117 So.3d 331 (Miss. 2013) ........................... 32, 33, 35

*Bruner v. Anheuser-Busch,* 153 F. Supp. 2d 1358, 1360 (S.D. Fla. 2001) ................................... 22

*Burst v. Shell Oil Co.*, 650 F. App'x 170 (5th Cir. 2016) ........................................................ 4, 13

*Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482 (1984)............................................................... 47

*California Chamber of Com. v. Council for Educ. & Rsch. On Toxics*, 29 F.4th 468 (9th Cir. 2022) ................................................................................................................................... 37

*Candeleria v. Conopco*, 2023 U.S. Dist. LEXIS 33180 (E.D.N.Y. Feb. 28, 2023) ............... 12, 16

*Castano v. Am. Tobacco Co.*, 961 F. Supp. 953 (E.D. La. 1997) ................................................ 22

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557 (1980) ........................... 36

*Centennial Ins. Co. v. Ryder Truck Rental*, 149 F.3d 378 (5th Cir. 1998) ................................. 34

*Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296 (11th Cir. 2014) .......................... 13

*Click v. GM LLC*, 2020 U.S. Dist. LEXIS 104526 (S.D. Tex. Mar. 27, 2020) ................. 28, 29, 30

*Coene v. 3M Co.*, 2011 U.S. Dist. LEXIS 89445 (W.D.N.Y. Aug. 10, 2011) ............................ 11

*Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283 (9th Cir. 2021) .................................................. 42

*Comer v. Murphy Oil USA, Inc.,* 839 F. Supp. 2d 849 (S.D. Miss. 2012) ................................... 16

*Courson v. Cordis Corp.*, 2018 U.S. Dist. LEXIS 102814 (N.D. Miss. June 20, 2018) .............. 29

*Crihfield v. Bellsouth Telecomms., LLC*, 2025 LX 178401 (S.D. Miss. Mar. 20, 2025) ........ 17, 18

*Dale v. Ala Acquisitions, Inc.*, 203 F.Supp.2d 694 (S.D. Miss. 2002) ........................................ 33

*Daniels v. Crocker*, 235 So. 3d 1 (Miss. 2017) ........................................................................... 28

*Deese v. Immunex Corp.,* 2012 U.S. Dist. LEXIS 17342 (S.D. Miss. Feb. 13, 2012) ................. 24

*Dickens v. A-1 Auto Parts & Repair, Inc.*, 2018 U.S. Dist. LEXIS 186951 (S.D. Miss. Nov. 1, 2018) ............................................................................................................... 11, 34, 33

*Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331 ................................................................ 50

*Dixieland Food Stores, Inc. v. Kelly's Big Start, Inc.*, 391 So.2d 633 (Miss. 1980) .................... 29

*Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226(5th Cir. 2022) ................................. 48

*Ducksworth v. Rook*, 2015 U.S. Dist. LEXIS 20563 (S.D. Miss. Feb. 20, 2015) ................... 18, 19

*DuRocher v. Riddell*, *Inc.*, 97 F. Supp. 3d 1006 (S.D. Ind. 2015) .............................................. 11

*Elias v. Nissan N. Am., Inc.*, 2026 LX 185059 (M.D. Tenn. Mar. 31, 2026) ............................. 31

*Elliott v. El Paso Corp.*, 181 So.3d 263 (Miss. 2015) .......................................................... 25, 26

*Elson v. Black*, 56 F.4th 1002 (5th Cir. 2023) ........................................................................... 29

*Empacadora de Carnes v. Curry,* 476 F.3d 326 ............................................................... 43

*Fazard v. Knauf Gips KG*, 2024 U.S. Dist. LEXI 89017 (S.D.Miss. May 13, 2024) .................. 26

*Frame v. City of Arlington*, 657 F.3d 215 (5th Cir. 2011) ............................................... 9

*Franklin v. Intuitive Surgical Operations, Inc.,* 2025 LX 172791 ............................... 8, 15, 23, 25

*Garrison v. Heublien*, Inc. 673 F.2d 189 (7th Cir. 1982) ............................................. 22

*Gilmer v. McRae*, 355 So.2d 219 (Miss. 2022) ........................................................... 33

*Giusti v. Alliant Ins. Servs.*, 2026 LX 78788 (E.D. La. Feb. 26, 2026) ................................... 17-18

*Goode v. City of Southaven*, 2019 U.S. Dist. LEXIS 128983 (N.D. Miss. May 1, 2019) ............ 33

*Goodnight Terminal Servs., Inc. v. ASG Chem. Holdings, LLC*, 2026 LX 76231 (S.D. Miss. Feb. 9, 2026) ....................................................................................................... 18

*Gorran v. Atkins Nutritional's*, 464 F. Supp.2d 315 (S.D.N.Y. Dec. 11, 2006) ........................... 21

*Granny's All. Holdings, Inc. v. Farrow Constr. Specialities, Inc.*, 2012 U.S. Dist. LEXIS 70394 (S.D. Miss. May 21, 2012) ............................................................................... 28

*Green Hills Dev. Co., LLC v. Oppenheimer Funds, Inc.*, 2020 U.S. Dist. LEXIS 138524 (S.D. Miss. Aug. 4, 2020) ...................................................................................... 34-35

*Guidry v. Janssen Pharms., Inc.*, 206 F. Supp. 3d 1187 (E.D. La. 2016) ................................... 44

*Hargrave v. Fibreboard Corp.*, 710 F.2d 1154 (5th Cir. 1983) ............................................ 49-50

*Harris v. Brush Engineered Materials*, 2005 U.S. Dist. LEXIS 42348 (S.D. Miss. Feb. 18, 2005) ....................................................................................................... 31, 35

*Henley v. Biloxi H.M.A., L.L.C.*, 48 F.4th 350 (5th Cir. 2022) ............................................ 31, 34

*Hicks v. Andrews*, 2024 U.S. Dist. LEXIS 50454 (E.D. Tx. Feb. 28, 2024) ............................... 18

*Hockman v. I-Flow, LLC*, 2017 U.S. Dist. LEXIS 214949 (D. Colo. Dec. 7, 2017) ...................... 29

*Holk v. Snapple Bev. Corp.*, 575 F.3d 329 (3rd Cir. 2009) ............................................... 45

*In re Acetaminophen*, 2023 U.S. Dist. LEXIS 73702 (S.D.N.Y. Apr. 27, 2023). ....................... 15

*In re Baby Food Prods. Liab. Litig.*, No. 24-md-03101-JSC, 2026 U.S. Dist. LEXIS 41529 (N.D. Cal. Feb. 27, 2026)..................................................................................................... 13

*In re BPA Polycarbonate Plastic*, 2009 WL 3762965 (W.D. Mo. Nov. 9, 2009)....................... 36

*In re DePuy Orthopedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, 888 F.3d 753 (5th Cir. 2018) .......................................................................................................................... 34

*In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 25 F. Supp. 2d 837 (N.D. Ill. 1998) ... 36

*In re Juul Labs, Inc. Mktg. Sales Pracs. & Prods. Liab. Litig.*, 2022 LX 124510 (N.D. Cal. Apr. 29, 2022); ................................................................................................................. 22

*In re R.M.J.*, 455 U.S. 191 (1982)............................................................................................. 36

*In re Soc. Media Adolescent Addiction/Pers. Inj.*, 754 F.Supp.3d 946 (N.D. Cal. 2024) ............ 22

*In re Zantac (Ranitidine) Prods. Liab. Litig.*, 644 F. Supp. 3d 1075 (S.D. Fla. 2022)................. 13

*Intent Performance LLC v. Intent Sports & Fitness, LLC*, No. 2:23-cv-86-TBM-RPM, 2025 LX 192289 (S.D. Miss. June 5, 2025).................................................................................. 33

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ....................................................... 47

*Johansen v. Myers*, 2023 U.S. Dist. LEXIS 148979 (S.D. Miss. Aug. 24, 2003) ........................ 19

*Johnson v. Enter. Leasing Co.,* 2023 U.S. Dist. LEXIS 191420 (S.D. Miss. Oct. 25, 2023)........... ................................................................................................................................. 27, 28

*Johnson-Jack v. Health-Ade,* 587 F.Supp.3d 957 (N.D. Cal. 2022)...................................... 15, 29

*Jones v. Jones Cnty*, 2023 U.S. Dist. LEXIS 169135 (S.D. Miss. Sept. 22, 2023) ................ 12, 20

*Jones v. KPMG LLP*, 2018 U.S. Dist. LEXIS 177326 (S.D. Miss. Oct. 15, 2018).......... 32, 33, 34

*Joshua Props., LLC v. D1 Sports Holdings, LLC*, 130 So.3d 1089 (Miss. 2014) ........................ 47

*Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239 (5th Cir. 2012) .................................................... 34

*Koon v. AstraZeneca Pharms. LP*, 2017 U.S. Dist. LEXIS 21553 (D.Kan. Feb. 15, 2017) ........ 29

*Krommenhock v. Post Foods, LLC*, 255 F.Supp 3d 938 (N.D. Cal. June 1, 2017) ...................... 15

*Krommenhock v. Post Foods, LLC*, 2018 U.S. Dist. LEXIS 42938 (N.D. Cal. Mar. 15, 2018) ...... ................................................................................................................................. 15, 37

*Kyle K. v. Chapman*, 208 F.3d, 940 (11th Cir. 2000) ................................................................... 18

*Lamar v. Thomas Fowler Trucking, Inc.*, 956 So. 2d 911 ........................................................ 1, 20

*Landrum v. Livingston Holdings*, LLC, 396 So. 3d 1026 (Miss. 2024) ..................................... 34

*Lightheart v. Salvation Army*, 2024 U.S. Dist. LEXIS 158535 (S.D. Miss. Sept. 4, 2024) ......... 18

*Little v. Smith & Nephew, Inc.*, 2015 U.S. Dist. LEXIS 75666 (N.D. Miss. Jun. 11, 2015)) ...........
.................................................................................................................................. 23, 25

*Loshelder Prop.*, 2026 LX 24953 (S.D. Miss. Jan. 26, 2026) ..................................................... 32

*M St. Invs., Inc. v. Zurich Am. Ins. Co.*, 2014 U.S. Dist. LEXIS 42096 (S.D. Miss. Mar. 28, 2014)
.................................................................................................................................. 29

*Mansfield Oil Co. v. Capitala Fin. Corp.*, 2020 Bankr. LEXIS 1258 (Bankr. S.D. Miss. May 8,
2020) .................................................................................................................... 34

*Manuel v. Pepsi-Cola*, 2018 U.S. Dist. LEXIS 83404 (S.D.N.Y. May 17, 2018) ....................... 14

*Manuel v. Pepsi-Cola*, 763 F.App'x 108 (2d Cir. 2019) ............................................................ 14

*Martin v. Crown Equip. Corp.*, 2013 .S. Dist. LEXIS 191786 (N.D. Ga. Apr. 15, 2013) ........... 11

*Martinez vs. Kraft Heinz Co., Inc,* 2025 U.S. Dist. LEXIS 164054 ..................................... *passim*

*Matrixx Initatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) .................................................. 14, 16

*McCune v. United States DOJ*, 2012 U.S. Dist. LEXIS 102614 (S.D. Miss. July 24, 2012) ......... 9

*McGrath v. Bayer HealthCare Pharms. Ins.*, 393 F.Supp. 3d 161 (E.D.N.Y. 2019) .............. 13-14

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ............................................................................ 38

*Meek v. Gold Coast Skydivers, Inc.*, 2016 U.S. Dist. LEXIS 1686 ........................................ 1, 3, 9

*Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507 (5th Cir. 2018) ............................ 33, 34

*Mills v. Baker*, 2021 U.S. Dist. LEXIS 85656 (S.D. Miss. May 5, 2021) ......................... 32, 33-34

*Mills v. Giant of Md. LLC*, 508 F.3d 11 (D.C. Cir. 2007) .......................................................20-21

*Moore v. BASF Corp.*, 2011 U.S. Dist. LEXIS 134848 (E.D. La. Nov. 21, 2011) .................10-11

*Moore v. P&G-Clairol, Inc.*, 781 F. Supp. 2d 694 (N.D. Ill. 2011) ............................................ 13

*Mullen v. Bell Helicopter Texron, Inc.*, 2015 U.S. Dist. LEXIS 138771 (S.D. Miss. Aug. 17, 2015) .......................................................................................................................... 24

*Multiplan, Inc. v. Holland*, 1:14-cv-00315 (S.D. Miss.March 30, 2018)(Ex. A) ........................ 35

*Multiplan, Inc. v. Holland*, 937 F.3d 487 (5th Cir. 2019).............................................................. 35

*Multiplan, Inc. v. Holland*, No., 2016 U.S. Dist. LEXIS 96656 (S.D. Miss. July 25, 2016)............ .................................................................................................................................... 32, 35

*Nat'l Inst. of Family and Life Advocates v. Becerra,* 585 U.S. 755 (2018)................................. 37

*National Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1253 (9th Cir. 2022) ................................ 37

*Oliver v. Covidien Sales LLC,* 2020 U.S. Dist. LEXIS 113759 ................................................ 1, 25

*Organic Consumers Ass'n v. Sanderson Farms, Inc.*, 284 F. Supp. 3d 1005 (N.D. Cal. 2018)... 42

*O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218 (10th Cir. 2007). ..................................... 48

*Palmer v. Volkswagen of Am., Inc.*, 905 So. 2d 564 (Miss. Ct. App. 2003)................................. 19

*Patten v. Matco Tools Corp.*, 2024 U.S. Dist. LEXIS 112424....................................... 2, 8, 16, 23

*Pelman v. McDonald's Corp.*, 237 F.Supp.2d 512 (S.D.N.Y. 2003) .............................. 17, 21, 22

*Pelman v. McDonald's Corp.,* 396 F.3d 508 (2d Cir. 2005)......................................................... 17

*Phelps v. Hormel Foods Corp.*, 244 F. Supp. 3d 1312 (S.D. Fa. 2017) ...................................... 41

*Phillips 66 Co. v. Lofton*, 94 So.2d 1051 (Miss. 2012)................................................................. 25

*Pitts v. Ford Motor Co.*, 127 F.Supp. 3d 676 (S.D. Miss. 2015).................................................. 50

*Plumley v. Massachusetts*, 155 U.S. 461 (1894)....................................................................38-39

*Priest v. Sandoz, Inc.*, 2016 U.S. Dist. LEXIS 186635 (W.D. Tex. Dec. 29, 2016) .............. 10, 12

*R.J. Reynolds Tobacco Co. v. King*, 921 So.2d 268 ........................................................20, 25-26

*Rex Distrib. Co. v. Anheuser-Busch, LLC*, 271 So. 3d 445 (Miss. 2019)................................ 33, 35

*Rodriguez v. Duffy*, 2025 U.S. App. Lexis 10170.................................................................... 9, 37

*S.F. v. Archer-Daniels-Midlands., Co.*, 2014 U.S. Dist. LEXIS 55195 (W.D.N.Y. Apr. 21, 2014) .................................................................................................................................... 17

*Sciortino v. PepsiCo, Inc.*, 108 F. Supp. 3d 780 (N.D. Cal. 2015) .............................................. 45

*Sellers v. Volkswagen AG, Volkswagen of Am., Inc.* 2022 U.S. Dist. LEXIS 160015 (S.D. Miss, Sept. 6, 2022) ......................................................................................................................... 50

*Sewell v. Monroe City Sch. Bd.,* 974 F.3d 577 (5th Cir. 2020)..................................................... 8

*Singleton v. Chevron United States, Inc.*, 835 F. Supp. 2d 144 (E.D. La. 2011).......................... 11

*Slocum v. Allstate Ins. Co.,* 2020 U.S. Dist. LEXIS 12835 (S.D. Miss. Jan. 27, 2020) .......... 18-19

*Smith v. GE Healthcare Inc.*, 2020 U.S. Dist. LEXIS 67211 (W.D. La. Mar. 31, 2020)............. 13

*Smith v. Union Carbide Corp.,* 200 So. 3d 1035 (Miss. 2016)...................................................... 12

*Sphere Drake Ins. PLC v. Gainsco Cty. Mut. Ins. Co.,* 2001 U.S. App. LEXIS 30373 ........... 3, 17

*Stacy v. Aetna Cas. & Sur. Co.*, 484 F.2d 289, 292-293 (5th Cir. 1973)...................................... 34

*State Indus. v. Hodges*, 919 So.2d 943 (Miss. 2006).................................................................... 28

*Sunshine Mills, Inc. v. Nutra-Blend, LLC*, 417 So. 3d 133 (Miss. 2025) ..................................... 26

*Taylor v. Chase Auto Fin. Corp.*, 850 F. Supp. 2d 637 (N.D. Miss. 2012) .................................. 37

*Taylor v. JBS Foods USA*, 2025 U.S. Dist. LEXIS 9594 (D.S.D. Jan. 15, 2025) ............ 38, 40, 41

*Thomas v. Tex. Dep't of Pub. Safety*, 2026 LX 264985 (W.D. Tex. May 22, 2026) ................... 30

*Thorton v. Kroeger Co.*, 2022 U.S. Dist. LEXIS 29699 (D.N.M Feb. 17, 2022)......................... 42

*United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180 (5th Cir. 2009)..... 9, 10, 27

*United States v. Molina Healthcare of Ill., Inc.*, 10 F.4th 765 (7th Cir. 2025)........................... 9-10

*Vapor Tech. Ass'n v. Graham*, 2025 U.S. Dist. LEXIS 231497 (S.D.Miss Nov. 25, 2025) .. 36, 38

*Walker v. George Koch Sons, Inc.,* 610 F. Supp. 2d 551 (S.D. Miss. 2009) .......................... 12, 15

*Walker v. Smith,* 2017 U.S. Dist. LEXIS 33102 (S.D. Miss. Mar. 8, 2017)................................. 33

*Watson v. First Commonwealth Life Ins. Co.,* 686 F. Supp. 153 (S.D. Miss. 1988) ............... 26-27

*Watson Labs., Inc. v. State*, 241 So. 3d 573, 584 (Miss. 2018). ........................................... 10, 28

*Williams v. WMX Techs.*, 112 F.3d 175 (5th Cir. 1997) ........................................................... 9, 29

*Wilson v. City of Greenville Miss.*, 2023 U.S. Dist. LEXIS 192596 (N.D. Miss. Oct. 25, 2023) .... .............................................................................................................................................. 18

*Woods v. R.J. Reynolds Tobacco Co.*, 635 F. Supp. 2d 530 (S.D. Miss. 2009)................ 27, 29, 31

*Young v. Bristol-Myers Squibb Co.,* 2017 U.S. Dist. LEXIS 24730 (N.D. Miss. Feb. 22, 2017) .... .............................................................................................................................................. 25, 26

## **Statutes and Rules**

21 U.S.C. § 451, et seq............................................................................................................. 39-44

21 U.S.C. § 601, et seq............................................................................................................. 39-44

9 C.F.R. 21 U.S.C. § 300.2(a)....................................................................................................... 39

9 C.F.R. 21 U.S.C. § 317.8(a)....................................................................................................... 39

9 C.F.R. 21 U.S.C. § 412.2 ........................................................................................................... 42

Federal Rule of Civil Procedure 8(a) ...............................................................................8-9, 26-27

Federal Rule of Civil Procedure 9(b).............................................................................9-10, 26-27

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................... 8

Miss. Code Ann § 11-1-63................................................................................................... 19-26, 40

Miss. Code Ann § 13-3-57................................................................................................... 46-47

Miss. Code Ann § 97-23-3................................................................................................... 27, 40

Pub. L. No. 101-535 § 6(c)(2)....................................................................................................... 45

Restatement 2d of Torts § 402A and comments...............................................................21-22, 36

Defendants' motion should be denied primarily for one reason: it seeks to impose a pleading standard higher than the Federal Rules require. Defendants ask this Court to look beyond the Complaint and independently assess whether Plaintiff will prevail at trial—something the Fifth Circuit has expressly "caution[ed]" against. *Oliver v. Covidien Sales LLC,* 2020 U.S. Dist. LEXIS 113759, \*2 (S.D. Miss. June 30, 2020)(quoting *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011)).

The motion should also be denied because Defendants seek immunity from suit that both state and federal legislatures have declined to grant. "[I]t is not the province of the courts to create immunity to suit when such immunity is not expressly created by statute." *Lamar v. Thomas Fowler Trucking, Inc*., 956 So. 2d 911, 923 (Miss. App. 2006).

Plaintiff's Complaint sufficiently pleads plausible "non-fraud" claims against each Defendant – enough to give fair notice – and fraud with particularity.  Further, Plaintiff need not plead facts negating Defendants' affirmative defenses. Accordingly, Plaintiff respectfully submits that "judicial experience and common sense" support that Defendants' motion be denied. *Meek v. Gold Coast Skydivers, Inc*., 2016 U.S. Dist. LEXIS 1686, at \*9 (S.D. Miss. Jan. 7, 2016).

## I.    **INTRODUCTION**

The minor-Plaintiff, J.L., suffers from Type 2 diabetes, one of the most serious and potentially life-threatening medical conditions in the world, alleged to have been caused by his consumption of ultra-processed foods ("UPF"). Defendants are UPF manufacturers who, it is alleged, knew or should have known of the health dangers of their UPF but concealed those risks from J.L., his mother, Plaintiff Tamika Lawton, and the public, and instead engineered UPF to be addictive and promote overconsumption, all for profit. Five Defendants (the "Conspiracy

Defendants") are alleged to have conspired to maintain and expand the UPF market while agreeing to conceal information about the risks of UPF.

Plaintiff asserts five causes of action against each Defendant: failure to warn under the Mississippi Products Liability Act ("MPLA"); defective design under the MPLA; negligent misrepresentation; fraud, fraudulent misrepresentation and concealment (collectively, "fraud"); and deceptive advertising; she also asserts two causes against the Conspiracy Defendants: civil conspiracy; and aiding and abetting.[1] Plaintiff's well-pled Complaint contains nearly 850 paragraphs and details, *inter alia*: (1) the definition of UPF and its acceptance by scientists and researchers across the globe; (2) the scientific and epidemiological evidence causally linking UPF to Type 2 diabetes; (3) how addiction science permeates the UPF industry; (4) how each Defendant targeted children and minorities to market their respective UPF; (5) how the Conspiracy Defendants conspired to maintain and expand the UPF market while at the same time agreeing to conceal information regarding its dangers; (6) which UPF products J.L. consumed, when and how often; (7) J.L.'s resulting injuries; and (8) additional facts regarding proximate causation. The detail of these allegations on their face, and the well-settled case law that pleadings must be taken as true and liberally construed in Plaintiff's favor, *Patten v. Matco Tools Corp.*, 2024 U.S. Dist. LEXIS 112424, at *2 (S.D. Miss. June 26, 2024), warrant wholesale denial of Defendants' motion.

Defendants rely heavily upon a decision from outside this Circuit, in which a district court dismissed a UPF complaint for pleading deficiencies. *Martinez vs. Kraft Hein Co., Inc,* 2025 U.S. Dist. LEXIS 164054 (E.D. Pa. Aug. 25, 2025). Not only is this decision non-binding, but Plaintiff here filed her Complaint *after* that decision was entered. This is significant because, although

---

[1] Failure to warn, (Compl. at ¶¶ 704-720); defective design, (*id.* at ¶¶ 721-735); negligent misrepresentation, (*id.* at ¶¶ 736-752); fraud, (*id.* at ¶¶ 753-780); and (5) deceptive advertising (*id.* at ¶¶ 781-806); civil conspiracy, (*id.* at ¶¶807-829); aiding and abetting, (*id.* at ¶¶830-843).

Plaintiff respectfully disagrees with the holding in *Martinez*, Plaintiff specifically drafted her Complaint to add the plaintiff-specific allegations that the court found lacking in *Martinez*, and to ensure compliance with the law of this Circuit.[2] Additionally, where a single allegation applied to more than one Defendant, rather than grouping them as "Defendants" or repeating it separately, Plaintiff specified that it applied to "each Defendant," making clear it was meant to apply to each separately.[3] Plaintiff's allegations go beyond that which the Fifth Circuit has found to be proper pleading against multiple defendants. *Sphere Drake Ins. PLC v. Gainsco Cty. Mut. Ins. Co.,* 2001 U.S. App. LEXIS 30373, at *5-6 (5th Cir. Aug. 21, 2001)("most reasonably construed," the plaintiffs were "alleging facts against all defendants as a convenient shorthand in lieu of redundantly re-alleging the same facts against each defendant by name").

Further, as it pertains to identifying ingredients and manufacturing processes for each UPF J.L. ingested, Plaintiff did not do so because pleading such would not be in accordance with the law. First, a plaintiff is not required to set forth every fact supporting her claim at the pleading stage. *Meek*, 2016 U.S. Dist. LEXIS 1686, at *9. Second, the literature on the dangers of UPF does not rely on the specific ingredients or exact manufacturing processes of each UPF; this is because

---

[2] For example, Plaintiff's Complaint contains over 160 plaintiff-specific allegations, compared to the nine identified in *Martinez*, including here allegations regarding: (1) which UPF J.L. consumed; (2) which manufacturers were responsible for the particular UPF J.L. consumed; (3) when and how often J.L. consumed each Defendants' UPF; (4) the date of J.L.'s diagnosis of Type 2 diabetes; (5) how long J.L. had consumed Defendant's UPF before being diagnosed with Type 2 diabetes; and (6) there being no other plausible explanation, such as lack of exercise, genetics, non-UPF or any combination thereof, for the minor-Plaintiff's Type 2 diabetes other than UPF. (Compl. at ¶¶ 4, 34-37, 41-45, 380, 590-703, 711, 713, 715, 717-718, 727, 729-733, 742, 746-750, 761-763, 768-771, 774, 776-778, 789, 797-799, 801, 803-804, 823-825, 827-828, 838-841).

[3] *Id.* at ¶¶ 208, 213, 297, *cf.* to ¶¶185-188, *cf to* ¶¶ 534, 808, 831. In two areas, Plaintiff intended to and properly grouped Defendants. First, Plaintiff asserts collective allegations as to Defendants Kellogg and Kellanova because they both are successors to the Kellogg Company, and collectively operated as "Kellogg Company". *Id.* at ¶94 Second, Plaintiff asserts group allegations as to the Conspiracy Defendants because such is required to plead conspiracy and aiding and abetting. *See Roussel v. Hutton*, 638 So.2d 1305, 1315 (Miss. 1994)(conspiracy is "a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully.").

the definition of UPF was never intended to focus on individual ingredients or specific processes; it focuses on UPF as final industrialized products.[4]  Third, proving causation requires a focus on the entire product, not necessarily the ingredients and/or processes. *See Burst v. Shell Oil Co.*, 650 F. App'x 170, 173-174 (5th Cir. 2016).

Consequently, because Plaintiff's Complaint does ***not*** contain allegations that are "virtually identical" to those in the *Martinez* Complaint as Defendants wrongly assert, the *Martinez* decision is unhelpful. To this end, Plaintiff's Complaint is not an impermissible shotgun pleading, and Plaintiff has sufficiently pled her causes of action. Further, Plaintiff's claims are not preempted nor violative of the First Amendment. Lastly, as to personal jurisdiction, public evidence exists contradicting the Declaration of Defendant Mondelez International, Inc. ("MII"), including its own complaint filed in federal court.[5]

## II.    STATEMENT OF FACTS

### A.    The Definition of UPF – the NOVA Classification

The products at issue in this action are manufactured, marketed and sold by each Defendant as food, and they fall within the definition of UPF.[6] UPF are "formulations of, typically, cheap industrial ingredients using a series of industrial processes. These ultra-processed products are not modified foods, but formulations made mostly or entirely of fractionated substances that have undergone hydrolysis, hydrogenation, or other chemical modifications, and contain ingredients that have no or rare culinary use."[7] This definition was first coined in 2010 by researchers at the University of Sao Paulo Brazil, led by Dr. Carlos Monteiro, an epidemiologist, who introduced the

---

[4] Compl. at ¶¶ 6-7, 24-25, 33, 105-128, 133-134, fns. 1, 4, 30-32, 39-44, 47-48, 52-53, 58, 63.
[5] Plaintiff is currently negotiating a stipulation of substitution with Post Holdings, Inc.
[6] Compl. at ¶¶ 4, 34-36, 48, 54, 60, 65, 70, 75, 80, 85, 90, 96, 101, 105-115, 594-603, 605-607, 615-617, 625-627, 635-637, 645-647, 655-657, 665-667, 675-677, 685-687, 695-697.
[7] *Id.* at ¶109; *see also* ¶¶ 6, 105-115.

NOVA classification system.[8] This system categorizes "food" based on the extensiveness of its processing, and UPF is its own categorization, separated from three other categories of foods that do not undergo industrial processing; therefore, any proposed alternative design to UPF are these other categories of food (i.e. non-processed or minimally processed foods).[9]

Since 2010, studies have continued to grow supporting Dr. Monteiro's definition of UPF, which is now so well accepted that voluminous peer-reviewed literature relates to UPF and, particularly, defines it in the same manner as Plaintiff in the Complaint.[10]  Recently, in November of 2025, the Lancet Journal, one of the world's most prestigious medical journals, published a series dedicated to UPF which adopts this now globally recognized definition.[11] Importantly, the authors of these studies do not focus on the specific ingredients of each UPF or how they are made; while ingredients and processing help identify UPF, the studies focus on UPF as finished products—designed to be addictive and causally associated with Type 2 diabetes.[12]

**B.     The Negative Health Consequences of UPF**

The prevalence of UPF exploded in the 1980s, and over the next 45 years, UPF came to dominate the American food environment and diet.[13] Currently, about 73% of the "food" in our food supply is UPF, and, on average, children derive over 2/3 of their energy from UPF.[14] With

---

[8] *Id.* at ¶¶ 105-106, 393, fn. 32, 39-41, 330

[9] *Id.* at ¶¶115, 121-122, 135-136, 235, 237, 268, 362, 364, 501.

[10] *Id.* at ¶¶ 6-7, 24-25, 33, 117, 133-134, fns. 1, 4, 30-32, 39-44, 47-48, 52-53, 58, 63. This literature focuses on the negative health effects of UPF, the addictive nature of UPF, the excessive marketing of UPF by the UPF industry, and the UPF industry's motivation behind forcing their addictive and dangerous UPF on the unwitting public – profit maximization.  (*Id.*)

[11] *Id.* at ¶33, fn. 30.

[12] *Id.* at ¶¶ 6-7, 24-25, 33, 117, 133-134, fns. 1, 4, 30-32, 39-44, 47-48, 52-53, 58, 63.

[13] *Id.* at ¶¶ 7, 356.

[14] *Id., see also* fns. 4, 328. Additionally, in 2019, a UPF study undertaken by the U.S. National Institute of Health concluded that subjects receiving a UPF diet consumed over 500 calories more than those on a non-UPF diet, and gained approximately a pound more each week. *Id.* at ¶ 121, fn. 44. A similar Japanese UPF study confirmed these results finding that individuals on a UPF diet consumed 813.5 calories more a day and gained an average of 1.2 pounds more each week.  *Id.* at ¶ 121, fn. 44.

the increased overconsumption of UPF came the explosion in negative health risks, including Type 2 diabetes.[15] The number of Americans with Type 2 diabetes has tripled since 1980 with the rates of childhood Type 2 diabetes doubling between 2000 and 2017.[16] And since UPF was first defined by Dr. Monteiro, literature has emerged supporting a "convincing" and "clear" causal link between UPF and Type 2 diabetes, independent of nutritional profiles and obesity.[17]

The overconsumption of UPF causing the explosion of Type 2 diabetes can easily be traced back to the food industry, inclusive of each Defendant.[18] Plaintiff's Complaint is replete with detailed allegations about the history of UPF and how each Defendant drove their overconsumption through addiction-science research and aggressive marketing, first developed by two major tobacco companies, R.J. Reynolds and Philip Morris ("Tobacco Companies").[19]

At all relevant times, Defendants knew or should have known their UPF were potentially addictive, engineered to be overconsumed, and capable of causing Type 2 diabetes, but concealed this from J.L., Plaintiff, and the public and affirmatively represented the UPF were safe for human consumption.[20] Additionally, the six Conspiracy Defendants and/or their predecessors met secretly on April 8, 1999 to discuss the "devastating public health consequences" of their UPF, which resulted in an agreement, not to disclose these consequences to the public, and to deceive and defraud the public, including J.L., regarding the negative health risks associated with their UPF in order to expand the UPF market and increase their profits.[21] All Defendants took further pages

---

[15]  *Id.* at ¶¶ 8-9, 22-23, 117, 126, fn. 5, 6, 19, 23-24, 42, 52, 367-381.
[16] *Id.* at ¶¶ 22, 374, fn. 19, 341.
[17] *Id.* at ¶¶ 24-27, 117-119, 124-126, 137, fn. 42, 52.
[18] *Id.* at ¶¶ 11-22, 120, 138-363.
[19] *Id.*; *see also* ¶¶ 114-115.
[20] *Id.* at ¶¶4, 11-21, 28-32, 34, 115, 140-365, 379, 381-385, 390-490, 492, 534-589, 593, 598-600, 607-608, 617-618, 627-628, 637-638, 647-648, 657-658, 667-668, 677-678, 687-688, 697-698, 706-710, 712-714, 716, 719, 723-726, 728, 734, 738-746, 748, 751, 756-776, 779, 787-790, 792-798, 800, 802, 805).
[21] *Id.* at ¶¶29-32, 534-589, 807-843.

from the Tobacco Companies' playbook, such as lobbying for political protection, using the "deny, denounce, delay" strategy to deflect criticism of their actions, biasing research findings to make them favorable to their financial interests, and seeking to rig the legal system in ways that would keep them from having to answer for the harms they were knowingly creating.[22]

**C.    Plaintiff's Allegations as to His UPF Use, Injuries and Specific Causation**

Plaintiff alleges J.L. consumed UPF manufactured by each Defendant, identifies which Defendant made each UPF he consumed, and identifies when and how often he consumed it.[23] J.L., born in 2009, used UPF his entire life, and the year he first used each Defendant's UPF varies by product; for example, his regular, frequent, and chronic use of Kraft Heinz's UPF was from 2011 until his Type 2 diabetes diagnosis, and Coca-Cola's beginning about 2012.[24]

Additionally, the Complaint alleges the regularity of J.L.'s UPF ingestion. For Kraft Heinz, for example, Plaintiff alleges he ingested Capri Suns about three times a week over seven years before diagnosis; for Coca-Cola, about twice a week over the six years before diagnosis.[25] Regarding J.L.'s injury, Plaintiff identifies it as Type 2 diabetes, first diagnosed on May 15, 2019, and alleges a temporal connection between his UPF use and his diagnosis.[26]

Lastly, Plaintiff asserts numerous allegations supporting plaintiff-specific causation (relating J.L.'s injury to Defendants' UPF and/or misconduct). First, she relies on the allegations

---

[22] *Id.* at ¶¶ 551-554, 557-580.

[23] Comp. at ¶¶ 4, 41-42, 594-596, 604-606, 609-610, 612, 614-616, 619-620, 622, 624-626, 629-630, 632, 634-636, 639-640, 642, 644-646, 649-650, 652, 645-656, 659-660, 662, 664-666, 669-670, 672, 674-676, 679-680, 682, 684-686, 689-690, 692, 694-696, 699-700, 702, 711, 715, 727, 729, 742, 747, 768-770, 774, 799, 801, 824, 838

[24] *Id.* at ¶¶41-42 604-606, 609-610, 614-616, 624-626, 629-30, 634-636, 639-640, 644-646, 649-650, 654-656, 659-660, 664-666, 669-670, 674-676, 679-680, 684-686, 689-690, 694-696, 669-700.

[25] *Id.* at ¶¶ 605, 635.

[26] *Id.* at ¶¶ 4, 35-37, 44-45, 590, 594-597, 610-613, 620-623, 630-633, 640-643, 650-653, 660-663, 670-673, 680-683, 690-693, 700-703, 717-718, 732-733, 749-750, 768, 777-778, 803-804, 823, 827-828, 840-841.

of general causation, defendants' knowledge, addiction research, aggressive improper marketing, and conspiracy.[27] Second, she alleges J.L.'s diabetes was caused by his regular, frequent, and chronic ingestion of UPF, with no other plausible explanation—such as lack of exercise, genetics, non-UPF, or any combination—for it.[28] Third, for each cause of action, Plaintiff alleges how the UPF J.L. ingested and/or each Defendant's conduct related thereto caused J.L.'s Type 2 diabetes.[29]

## III.    LEGAL STANDARD

Complaint allegations only need "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Facial plausibility [exists] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility is not akin to probability. *Franklin v. Intuitive Surgical Operations, Inc.,* 2025 LX 172791, *4 (S.D. Miss. Mar. 13, 2025) (quoting *Iqbal*, 556 U.S. at 678)).

A motion to dismiss is "not meant to resolve disputed facts or test the merits of a lawsuit." *Sewell v. Monroe City Sch. Bd.,* 974 F.3d 577, 581 (5th Cir. 2020). Courts must "liberally constru[e] the complaint in plaintiffs' favor and accept[] all well-pleaded factual allegations as true" to "determine whether the plaintiff has asserted a legally sufficient claim for relief." *Patten,* 2024 U.S. Dist. LEXIS 112424, at *2 (citations omitted). Rule 12(b)(6) motions "are viewed with disfavor and are rarely granted." *Id.* (citations omitted).

---

[27] *Id.* at ¶¶ 105-389. Regarding general causation, as discussed below in Section IV(B)(1), there is no support, and Defendants have cited none, for their argument that the medical literature causally associating UPF with Type 2 diabetes cannot be applied to children with Type 2 diabetes.

[28] *Id.* ¶¶ 4, 34-37, 43-45, 379-380, 591-608, 610-613, 614-618, 620-623, 624-628, 630-633, 634-638, 640-643, 644-648, 650-653, 654-658, 660-663, 664-668, 670-673, 674-678, 680-683, 684-688, 690-693, 694-698, 700-703, 713, 717-718, 730-733, 742, 746, 748-750, 761-763, 767-771, 774, 776-778, 786, 797-799, 802-804, 823-825, 827-828, 838-841.

[29] *See* fns. 27-28, herein; *see also infra* at Sections IV(B).

Neither *Iqbal* nor *Twombly* require a complete case at the pleading stage. *Meek,* 2016 U.S. Dist. LEXIS 1686, at *9. Where "judicial experience and common sense" signal a reasonable expectation that discovery will reveal evidence supporting damages, the motion should be denied. *Id.* at **9-10 (quoting *Iqbal*, 556 U.S. at 679). A plaintiff is entitled to the "benefit of imagination, so long as the hypotheses are consistent with the complaint." *Twombly,* 550 U.S. at 563.

A plaintiff is "not required to plead facts to negate an affirmative defense. *Rodriguez v. Duffy*, 2025 U.S. App. Lexis 10170, *4 (5th Cir. 2025). Dismissal should be denied where additional evidence is needed to support the defense. *Frame v. City of Arlington*, 657 F.3d 215, 239-240. (5th Cir. 2011) "Affirmative defenses in general are better suited for a motion for summary judgment than for a motion to dismiss." *McCune v. United States DOJ*, 2012 U.S. Dist. LEXIS 102614, *7-10 (S.D. Miss. July 24, 2012).

For fraud claims subject to Fed. R. Civ. P. 9(b), the legal standard "instructs a plaintiff to plead 'the time, place and contents of the false representation[], as well as the identity of the person making the misrepresentation and what that person obtained thereby.'" *United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009)(quoting *U.S. ex rel. Russell v. Epiq Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1997)).  However, Rule 9(b) should not be read to "reflect a subscription to fact pleading"; it only requires "simple, concise, and direct" allegations of the "circumstances constituting fraud," which after *Twombly* must make relief plausible, not merely conceivable, when taken as true." *Id.* (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)).  "The 'time, place, contents, and identity' standard is not a straitjacket for Rule 9(b)" and is "context specific and flexible." *Id.* at 190; *see also United States v. Molina Healthcare of Ill., Inc.*, 10 F.4th 765, 774 (7th Cir. 2025)("the 'who, what, when,

9

where, and how' of the fraud does not require such granular detail.") "Fraud is… a question best left to the factfinder, *Watson Labs., Inc. v. State*, 241 So. 3d 573, 584 (Miss. 2018).

**IV.    ARGUMENT**

**A.    Plaintiff Has Sufficiently Identified the UPF that J.L. Ingested so as to Provide Each Defendant with Fair Notice of the Claims Against Them.**

Defendants argue that Plaintiff's identification of product brands, as opposed to specific products, makes her Complaint deficient. Defendants' argument is meritless because neither Rule 8(a) nor Rule 9(b) requires that each and every relevant fact be pled. *Priest v. Sandoz, Inc.*, 2016 U.S. Dist. LEXIS 186635, *23 (W.D. Tex. Dec. 29, 2016)(citation omitted); *Grubbs*, 565 F.3d at 186. Plaintiff alleges J.L. consumed separate UPF made by each Defendant, identifies which Defendant made each product brand of the UPF he consumed, and identifies when and how often he consumed each UPF, *supra*, Section II(C), and this is sufficient at this stage of proceedings.

A case on point in this circuit is *Moore v. BASF Corp.*, 2011 U.S. Dist. LEXIS 134848 (E.D. La. Nov. 21, 2011). In rejecting a virtually identical argument, the court held the plaintiffs had sufficiently pled a plausible products liability cause of action against defendants by alleging that the plaintiff used separate products manufactured by three separate defendants, these products all contained the same ingredient, this ingredient was known to cause an injury, defendants knew or should have known of the dangers of this injury, and plaintiff developed this injury as a result of exposure to the products containing this dangerous ingredient. *Id.* at **13-18. The fact that the plaintiffs had not identified the specific name of the products, nor identified the exact dates and places of exposure was not fatal because the other assertions allowed the court to "draw the reasonable inference that the defendants were liable for the misconduct alleged." *Id.* at **17-18.

10

While plaintiffs would ultimately have to prove exposure to a particular product was a substantial factor generating the injury, such was not necessary at the early stage of pleadings. (*Id.*)[30]

Here, like in *Moore,* Plaintiff alleges J.L. consumed separate brand-name UPF made by separate Defendants; these products fall within the definition of UPF; the literature supports that UPF causes Type 2 diabetes; Defendants knew or should have known of the dangers of UPF, including addictiveness and Type 2 diabetes risk; and J.L. developed Type 2 diabetes from his UPF exposure. *Supra* at Section II. Therefore, her allegations are thus sufficiently pled.

Defendants' reliance upon *Dickens v. A-1 Auto Parts & Repair, Inc.*, 2018 U.S. Dist. LEXIS 186951 (S.D. Miss. Nov. 1, 2018) is misplaced. There, the court simply dismissed any claim that asserted theories of recovery that would have relieved the plaintiff of his ultimate burden of *proving* product identification and proximate cause. *Id.* at **7-8 (citing *Monsato v. Hall.*, 912 So.2d 134, 137 (Miss. 2005)). The court did not hold that the plaintiff had to identify the specific products in a Complaint. *Id.* Defendants also cite *Martinez*, but as identified *supra* in Section I, Plaintiff drafted her Complaint to address *Martinez*'s purported deficiencies. Additionally, and importantly, that aspect of *Martinez* requiring product identification and specific manufacturing processes runs counter to more persuasive decisions from this Circuit as cited herein.

Accordingly, because Plaintiff adequately identifies products and brand names from each Defendant in the Complaint, Defendants' motion should be denied.

---

[30] *See also Singleton v. Chevron United States, Inc.*, 835 F. Supp. 2d 144, 148 (E.D. La. 2011)(citation omitted)("The mere fact that [plaintiff] does not yet point to a specific…product and specific dates of exposure does not make the claim implausible under *Iqbal*. The complaint… need not further give 'brand name' or other specific information pertaining to these products…[T]he allegations…taken collectively, allow the Court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'"); *Martin v. Crown Equip. Corp.*, 2013 .S. Dist. LEXIS 191786 (N.D. Ga. Apr. 15, 2013); *DuRocher v. Riddell, Inc.*, 97 F. Supp. 3d 1006, 1019 (S.D. Ind. 2015); *Coene v. 3M Co.*, 2011 U.S. Dist. LEXIS 89445, **9-10 (W.D.N.Y. Aug. 10, 2011).

**B.**      **Plaintiff Has Sufficiently Pled Proximate Cause**

Plaintiff agrees that, at the appropriate time, she will need to present evidence of proximate causation, *Smith v. Union Carbide Corp.,* 200 So. 3d 1035, 1041 (Miss. 2016); but for now, all that is required is that causation be sufficiently pled under the Federal Rules, which Plaintiff has done. *See Candeleria v. Conopco*, 2023 U.S. Dist. LEXIS 33180 (E.D.N.Y. Feb. 28, 2023)("Courts are loathe to dismiss claims for lack of proximate cause at the pleading stage.") Here, Defendants concede that Plaintiff has alleged that Defendants' UPF can cause Type 2 diabetes and that such occurred in this case. (Def. Br. at p. 1, 2, 6, 15-20.)  The inquiry should end here. Nonetheless, Plaintiff addresses Defendants' baseless arguments.

 "Proximate cause…is that cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury and without which the result would not have occurred." *Walker v. George Koch Sons, Inc.*, 610 F. Supp. 2d 551, 561 (S.D. Miss. 2009)(quoting *Delahoussaye v. Mary Mahoney's Inc.,* 783 So.2d 666, 671 (Miss. 2001)). In Mississippi, it is "well-settled" that "there may be more than one proximate cause." *Id.* (citations omitted).

**1.**      **Plaintiff Has Sufficiently Pled General Causation**

Defendants attack the scientific literature in Plaintiff's Complaint supporting that UPF can cause Type 2 diabetes, (Def. Br. at pp. 15-17), but arguments attacking facts and causation theories are not proper on a Rule 12(b)(6) motion. *Priest*, 2016 U.S. Dist. LEXIS 186635, *23-24.  To hold otherwise, would allow for a pleading standard that would require a plaintiff to prove causation before discovery. *Jones v. Jones Cnty*, 2023 U.S. Dist. LEXIS 169135, *15 (S.D. Miss. Sept. 22, 2023)(on a motion to dismiss, arguing a plaintiff cannot establish causation "put[s] the proverbial cart before the horse"). Defendants also offer no support for why the medical literature Plaintiff cites cannot show that UPF causes Type 2 diabetes in children and adolescents.

Defendants also attempt to mislead this Court by focusing not on the product itself – UPF – but on its characteristics, ingredients, processes or attributes.  (Def. Br. at p. 17.)  This is not only improperly raised now, but is contrary to what Plaintiff will ultimately need to prove at trial. As demonstrated by *Daubert* rulings of multiple courts, including the Fifth Circuit, focusing causation theories on a product itself, and not just its component parts, is permitted. *Burst v. Shell Oil Co.*, 650 F. App'x 170, 173-174 (5th Cir. 2016)(science needed to relate to the product as a whole not only an ingredient); *Moore v. P&G-Clairol, Inc.*, 781 F. Supp. 2d 694 (N.D. Ill. 2011) (expert needed to test or consider the chemicals as combined in the product itself not individually); *In re Baby Food Prods. Liab. Litig.*, No. 24-md-03101-JSC, 2026 U.S. Dist. LEXIS 41529, at *61 (N.D. Cal. Feb. 27, 2026)(the general causation question is whether a child's consumption of the products as a whole themselves were capable of causing ASD or ADHD.").[31] As recognized in these decisions, any argument that causation *must be* demonstrated on an ingredient-by-ingredient or process-by-process basis, and *cannot be* found based upon evidence relating to the product as a whole, is contrary to both scientific principle and applicable law.[32]

Defendants' case law is unhelpful.  In *Smith v. GE Healthcare Inc.*, 2020 U.S. Dist. LEXIS 67211, *16-17 (W.D. La. Mar. 31, 2020), in which a preemption argument not before this court was raised, no facts had been alleged supporting a causal association prior to a certain date, nor had a single supportive study been referred to. The court did not require identification of a study, but was only identifying it as one way in which a plaintiff could have supported her argument. *Id.* The court held similarly in *McGrath v. Bayer HealthCare Pharms. Ins.*, 393 F.Supp. 3d 161, 171-

---

[31] *See also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1304 (11th Cir. 2014); *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 644 F. Supp. 3d 1075, 1217-1218 (S.D. Fla. 2022)

[32] Plaintiff does not – and need not – take the position that where an individual ingredient or process has been linked to addiction or diabetes that information is irrelevant to the causation analysis.  But based on the case law, a plaintiff is not required to do so.

13

172 (E.D.N.Y. 2019) but differentiated that case from others, as we have here, where numerous scholarly articles and cases studies exist "documenting possible connections between [product use and injuries]." The "diet soft drink cases" are likewise distinguishable.[33] In those class action cases, in which fraud was alleged and economic damages sought, the courts dismissed the claims after finding that the word "diet" did not suggest that the products promoted weight loss and that the literature, at best, was evidence of a correlation, not causation. Here, by contrast, the literature Plaintiff cites is "far more powerful" in that it demonstrates more than just a correlation; one systematic review released in 2024 found "convincing" evidence of a direct association, and a 2023 meta-analysis confirmed a "clear link" between overall consumption of UPF and Type 2 diabetes.[34] The recent 2025 Lancet Journal series also confirmed the association.[35] But again, such a *Daubert*-like inquiry is inappropriate at the pleading stage.

In *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45 (2011), the Supreme Court rejected an argument similar to the ones raised by Defendants here, reiterating that even in fraud cases, "to survive a motion to dismiss, [a plaintiff] need only allege "enough facts to state a claim to relief that is plausible on its face," and the plaintiff there had done so there by alleging facts supporting a reliable causal link; the fact that one study failed to rule out the common cold as a

---

[33] These cases are *Manuel v. Pepsi-Cola*, 2018 U.S. Dist. LEXIS 83404, **20-26 (S.D.N.Y. May 17, 2018); *Manuel v. Pepsi-Cola*, 763 F.App'x 108, 109 (2d Cir. 2019); *Becerra v. Coca-Cola*, 2018 U.S. Dist. LEXIS 31870, **9-10 (N.D. Cal. Feb. 27, 2018); *Becerra v. Dr Pepper/Seven Up, Inc.,* 2018 U.S. Dist. LEXIS 142074, at *27 (N.D. Cal. Aug. 21, 2018).

[34] Compl. at ¶¶ 117, 126, fn. 42, 52.  In footnote 12 of their Brief, Defendants mislead the Court regarding the conclusions of two articles cited in the Complaint: Zhangling Chen et al., *Ultra-Processed Food Consumption and Risk of Type 2 Diabetes: Three Large Prospective U.S. Cohort Studies*, Diabetes Care., Jul. 2023 and Sajjad Moradi et al., *Ultra Processed Food Consumption and Adult Diabetes Risk: A Systematic Review and Dose-Response Meta Analysis*, Nutrients, Dec. 2021.  The conclusion of the *Chen* study was that high quality meta evidence shows that total UPF consumption is associated with higher type 2 diabetes risk. The conclusion of the *Moradi* study was that a higher intake of UPF was significantly associated with an increased risk of type 2 diabetes.

[35] *Id.* at ¶ 33, fn. 30.

cause did not make the stuy unreliable or the pleading deficient. *Id.* at n. 12.[36]

Accordingly, Plaintiff sufficiently alleges facts to support general causation.

## 2.      **Plaintiff Has Sufficiently Pled Specific Causation**

Despite pleading specific causation, *supra* at Section II(C), Defendants claim Plaintiff fails to allege that their UPF was the but-for cause of J.L.'s type 2 diabetes. (Def. Br. at p. 17.) Defendants' arguments are unsupported, and based on "semantics, rather than a practical reading of Plaintiffs'…Complaint." *Andrews v. Dairy Farmers of Am., Inc.,* No. 2:11-CV-97-KS-MTP, 2011 U.S. Dist. LEXIS 130109, at *14 (S.D. Miss. Nov. 9, 2011); *see also Franklin,* 2025 LX 172791, *8 (plaintiff's allegations could plausibly extend to an element of the cause of action).[37]

To briefly recap, the Complaint comprehensively sufficiently alleges: (1) general causation; (2) Defendants' manufacture of UPF as addictive products; (3) their excessive marketing, misrepresentations, and concealments directed at J.L. and the public; (4) their knowledge of the dangers of UPF; (5) the Conspiracy Defendants' conspiracy; (6) J.L.'s lifelong consumption of multiple UPF as a result of Defendants' wrongful conduct; (7) his Type 2 diabetes, diagnosed on May 15, 2019, caused by his UPF consumption; (8) his reasonable reliance on Defendants' conduct; (9) that he would not have consumed UPF had he known its dangers; (10) that no other cause exists; and (11) that he would not have been diagnosed but for the UPF.[38]

Regarding the pleading of risks factors or lack thereof, not only does the law not require

---

[36] Other lower court have held similarly. *See e.g.  Krommenhock v. Post Foods, LLC*, 255 F.Supp 3d 938, 963-964 (N.D. Cal. June 1, 2017) and reinforced in 2018 U.S. Dist. LEXIS 42938, *12, n.9 (Mar.  15, 2018); *Johnson-Jack v. Health-Ade,* 587 F.Supp.3d 957, 963 (N.D. Cal. 2022); *In re Acetaminophen*, 2023 U.S. Dist. LEXIS 73702, **7-8 (S.D.N.Y. Apr. 27, 2023).

[37] *See also Walker v. George Koch Sons, Inc.,* 610 F. Supp. 2d 551, 558-59 (S.D. Miss. 2009)(denying dismissal even at the summary judgment stage where reasonable inferences can be made from the evidence presented as to the element of the claim the plaintiff was intending to prove) .

[38] *See supra* Section II(C) for cited allegations.

that a plaintiff plead such in a Complaint,[39] but Plaintiff did in fact make such allegations. Specifically, she alleges that there are no plausible explanations for childhood Type 2 Diabetes *other* than UPF, it *cannot* be caused solely by a lack of exercise, genetics, non-UPF, or any combination thereof, there are no plausible alternative explanations for J.L.'s diabetes, and had J.L. not consumed Defendants' UPF over the course of many years, he would not have been diagnosed with Type 2 Diabetes at the age of nine.[40] As such, there is no merit to Defendants' argument here.

Defendants remaining arguments fare no better because Plaintiff was not required to plead what quantities of UPF J.L. consumed, when he began experiencing symptoms of his diabetes (in fact, diabetes does not always have symptoms), and any "meaningful temporal relationship between his consumption and diagnosis," (Def. Br. at p. 18), although Plaintiff did in fact plead the "meaningful temporal relationship".[41] Because plaintiffs allegations are to be taken as true, *Patten,* 2024 U.S. Dist. LEXIS 112424, at *2, Plaintiff has sufficiently pled specific causation.

Defendants' case law is also unhelpful. The only case from this Circuit, *Comer v. Murphy Oil USA, Inc.,* 839 F. Supp. 2d 849, 867-868 (S.D. Miss. 2012), is factually distinct. There it was alleged that defendants' misconduct mixed with other defendants' misconduct to cause global warming, which led to high sea surface temperature and sea level rise, which fueled Hurricane Katrina, which damaged the plaintiff's property. *Id.* The court found that the complaint did not adequately plead proximate cause because the alleged damages would have resulted from remote, improbable and extraordinary occurrences. *Id.* Such is simply not the case here.

---

[39] *See Candeleria*, 2023 U.S. Dist. LEXIS 33180, **6-7 (a plaintiff need not eliminate every other potential cause of an injury in order to plead causation); *Matrixx Initiatives Inc.,* 563 U.S. 27, 45, n. 12.
[40] *Id.* at ¶¶ 380, 597.
[41] Compl. at ¶¶ 42, 45, 597, 604-605, 610, 614-615, 620, 624-625, 630, 634-635, 640, 644-645, 650, 654-655, 660, 664-665, 670, 674-675, 680, 684-685, 690, 694-695, 700.

16

The *Martinez* decision has been addressed previously, and *Pelman v. McDonald's Corp.*, 237 F.Supp.2d 512, 538 (S.D.N.Y. 2003) was overruled by the Second Circuit which held that the information defendants claimed was missing in the complaint (i.e. what else the plaintiffs ate, how much they exercised, and family history) was properly the subject of discovery. *Pelman v. McDonald's Corp.,* 396 F.3d 508 (2d Cir. 2005). In *S.F. v. Archer-Daniels-Midlands., Co.*, 2014 U.S. Dist. LEXIS 55195, **12-13 (W.D.N.Y. Apr. 21, 2014), the court declined to follow the Second Circuit's precedent in *Pelman* questioning its viability, and, in so doing, dismissed the complaint for pleading a mere possibility of causation, not a plausibility of causation. Here, by contrast, the Complaint is replete with allegations support the plausibility of specific causation.

Accordingly, Defendants' argument should be rejected.

## C.    Plaintiff's Complaint is Not a Shotgun Pleading

As explained in the Introduction, *supra* Section I, Plaintiff drafted her Complaint to ensure that it did not qualify as a shotgun pleading as found in *Martinez*. The manner by which she did so is consistent with Fifth Circuit precedent. *Sphere Drake Ins. PLC,* 2001 U.S. App. LEXIS 30373, at *5-6 (grouping defendants together is "a convenient shorthand in lieu of redundantly re-alleging the same facts against each defendant by name", and "buying" defendants' argument "would contravene the accepted convention of collectively referring to multiple defendants as 'defendants' for the purpose of common allegations.") Other cases in this Circuit supports the Fifth Circuit's ruling. *Crihfield v. Bellsouth Telecomms., LLC*, 2025 LX 178401, at *13 (S.D. Miss. Mar. 20, 2025)(allegations against each defendant were similar and sufficient enough to place each defendant on notice of its own potential liability); *Giusti v. Alliant Ins. Servs.*, 2026 LX 78788, at *9-11 (E.D. La. Feb. 26, 2026)(citation omitted)("Not every instance in which a plaintiff's

17

pleadings lumps defendants together amounts to impermissible group or shotgun pleading.").[42]

Additionally, just because a complaint may contain some characteristics of a shotgun pleading, does not mean dismissal is warranted because a complaint need not "articulate a perfect statement of the legal theory supporting the claim asserted." *Crihfield*, 2025 LX 178401, at *13; *see also Wilson v. City of Greenville Miss.*, 2023 U.S. Dist. LEXIS 192596, at *3 (N.D. Miss. Oct. 25, 2023)(rejecting dismissal where defendant could "decipher which claims [were] being asserted against which defendants".).

Here, each Defendant is alleged to have been responsible for their own UPF. Plaintiff's allegations against them are substantially similar because each Defendant's individual tortious conduct that caused J.L.'s injury was substantially similar. Each Defendant has fair notice of the nature of Plaintiff's claims and the grounds upon which they rest, and, therefore, is capable of framing a response to Plaintiff's Complaint.

Defendants' cases are distinguishable. In *Goodnight Terminal Servs., Inc. v. ASG Chem. Holdings, LLC*, 2026 LX 76231 (S.D. Miss. Feb. 9, 2026), the Court found a shotgun pleading, not of improper grouping of defendants, but because two distinct causes of action and theories of recovery had been advanced in one count, and the Court had difficulty determining which alleged facts, if any, were relevant to which claims. Similarly, in *Ducksworth v. Rook*, 2015 U.S. Dist. LEXIS 20563, *14-15 (S.D. Miss. Feb. 20, 2015) and *Lightheart v. Salvation Army*, 2024 U.S. Dist. LEXIS 158535, *7-8 (S.D. Miss. Sept. 4, 2024), the Court found shotgun pleadings because the plaintiffs had heedlessly thrown a little bit of everything in in the hopes that something would stick. In *Slocum v. Allstate Ins. Co.,* 2020 U.S. Dist. LEXIS 12835, **11-13 (S.D. Miss. Jan. 27, 2020) the plaintiff had not responded to the "lumping in of defendants" argument at all, and the

---

[42] *Hicks v. Andrews*, 2024 U.S. Dist. LEXIS 50454, **16-19 (E.D. Tx. Feb. 28, 2024); *see also Kyle K. v. Chapman*, 208 F.3d, 940, 944 (11th Cir. 2000)

18

court dismissed, not on shotgun pleading grounds, but because the plaintiff had failed to state a negligence claim against both defendants. Lastly, the complaint in *Johansen v. Myers*, 2023 U.S. Dist. LEXIS 148979 (S.D. Miss. Aug. 24, 2003)(Guirola, J), was dismissed because it contained allegations "sweepingly" against the defendants, was confusing as to its allegations, and did not differentiate which allegations and causes of action applied to each defendant.

Here, Plaintiff did not plead in such a chaotic manner; instead, Plaintiff fully analyzed the facts of her case, set them forth in a detailed, organized and cohesive manner, and adopted seven separate coherent theories of liability.[43] *Ducksworth*, 2015 U.S. Dist. LEXIS 20563 at *16 (quoting *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1125-1128 (11th Cir. 2014). Accordingly, Plaintiff's Complaint actually prevents delay and does not "wast[e] scarce judicial and parajudicial resources". *Alexander v. Global Tel Link Corp.*, 2018 U.S. Dist. LEXIS119782, *14 (Guirola, J).

## D.    Plaintiff's Has Sufficiently Pled Her Failure to Warn Claim under the MPLA

### 1.    Defendants have a Duty to Warn

The MPLA automatically imposes a duty on manufacturers, designers, and sellers of a product to provide adequate warnings/instructions at the time of sale.  Miss. Code Ann. § 11-1-63; *see Palmer v. Volkswagen of Am., Inc.*, 905 So. 2d 564, 2003 Miss. App. LEXIS 752 (Miss. Ct. App. 2003)(subsequent history omitted). Because the statute unequivocally imposes upon this duty, the inquiry should end here. Nonetheless, Defendants argue Plaintiff does not plausibly allege any cognizable duty to warn under the MPLA, citing distinguishable tort law of other states. (Def. Br. at pp. 29-31.) As to the MPLA itself, Defendants cite only Miss. Code Ann § 11-1-63(e) – the open and obvious defense – to support their argument.

---

[43] In so doing, she made clear which of her allegations and causes of action are applicable to each Defendant, which are applicable to one Defendant, and which are applicable to a group of Defendants. Compl.  at ¶¶ 208, 213, 297, *cf.* to ¶¶185-188, *cf to* ¶¶ 534, 808, 831.

Frist, Defendants' 'argument is premature. Miss. Code Ann § 11-1-63(e) is an affirmative defense, and in *R.J. Reynolds Tobacco Co. v. King*, 921 So.2d 268, 272-273, the Mississippi Supreme Court held that affirmative defenses, such as those in the MPLA, are a matter of proof, on which the burden to prevail rests on the Defendants.[44]  As such, it is improper for Defendants to raise this defense at the pleadings stage. *Id.*

Second, in arguing that this Court should find, at the outset of this case, that they had no duty to warn because the dangers alleged by Plaintiff were the kind of known dangers about with manufacturers have no duty to warn (i.e. the open and obvious defense), Defendants are asking this Court to grant them blanket immunity from suit, even though the Mississippi legislature declined to do so when a bill Defendants' agents lobbied for in 2006 died less than 30 days after referral to House Judiciary A.[45] Because the state legislature declined to grant such immunity, this Court should decline to do so as well. *Lamar*, 956 So. 2d at 923)("[I]t is not the province of the courts to create immunity to suit when such immunity is not expressly created by statute.")

Third, Plaintiff disagrees that the dangers of UPF were open and obvious to J.L. and/or the ordinary consumer as she alleges in the Complaint – allegations Defendants must accept as true.[46] In arguing the open and obvious defense now, defendants are "putting the proverbial cart before the horse." *Jones,* 2023 U.S. Dist. LEXIS 169135, *15.

Fourth, Defendants' non-binding case law does not change the analysis. In *Mills v. Giant of Md. LLC*, 508 F.3d 11,15 (D.C. Cir. 2007), the Court found no duty where the risk alleged to be

---

[44] While *King* addressed a separate affirmative defense under the MPLA, Miss. Code Ann § 11-1-63(b), the Court noted that the statute had other affirmative defenses, including Miss. Code Ann § 11-1-63(e).

[45] The Complaint alleges that Defendants utilized a front group to lobby federal and state legislative bodies to pass laws to give them civil immunity for liability for weight gain, obesity and/or related conditions caused by food and non-alcoholic beverage consumption. (*Id.* at ¶570, fn. 491.) Not only were their efforts unsuccessful at a federal level, they were also unsuccessful with the Mississippi state legislature, despite Defendants' efforts. https://billstatus.ls.state.ms.us/2006/html/history/HB/HB0764.htm.

[46] Compl. at ¶¶ 602-603, 711.

associated with a food (i.e. gas and stomach discomfort) was a common allergy that was "widely known." In *Gorran v. Atkins Nutritional's*, 464 F. Supp.2d 315, 323-324 (S.D.N.Y. Dec. 11, 2006), the court found that there was no allegation that the food products were in a condition not anticipated by the average consumer; the consumer was aware of what he was getting.

Here, the injury alleged is not simply a common allergy. Moreover, Plaintiff alleges the UPF were in a condition not anticipated by the average consumer, and the ordinary consumer, including J.L., was unaware of the risks of UPF because Defendants engaged in unlawful conduct that kept UPF safety information from the public, including Plaintiff and J.L.[47]

Defendants also cite the Restatement (Second) of Torts § 402A, on which Mississippi's products liability law is based, citing to only snippets of comments e and i. However, reviewing these two comments (and others) in their entirety reveals that they support Plaintiff's argument. These comments state that "[s]ince the early days of the common law those engaged in the business of selling food intended for human consumption have been held to a high degree of responsibility for their products," and food manufacturers are not protected from all liability; they then identify examples of where such liability would attach such as against suppliers of poisonous/contaminated food and where the danger is "beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."[48] Restat 2d of Torts, § 402A, cmts. b, e, i. Precisely the facts here. Comment j also reemphasizes that a seller is required to warn about products which are dangerous when

---

[47] *Id.*; *see also* ¶¶ 706-710, 712, 714.

[48] Importantly, even products listed in § 402A, cmt. i (whiskey, tobacco and butter) can lead to liability where a manufacturer alters the product to "induce addiction," or "are so extraordinarily unhealthy that they are outside the reasonable contemplation of the consuming public or that the products are so extraordinarily unhealthy as to be dangerous in their intended use." *Pelman,* 237 F. Supp. 2d at 532.

21

consumed in excessive quantity or over a long period of time when the danger, or potential of danger, is not generally known or recognized. *Id.,* cmt. j.  Again, precisely the fact alleged here.[49]

Defendants' last argument – that they had no duty because Plaintiff never alleges J.L. was addicted to UPF, Def. Br. at p. 30,  misses the mark because Plaintiff's claims do not hinge on a diagnosis of addiction; she alleges the addictive qualities of UPF led to overconsumption by consumers, including J.L.[50] To this end, Plaintiff's allegations are different from those in *Pelman*, 237 F. Supp. 2d at 542, because she alleges Defendants purposely manufactured their UPF as a whole to be addictive, not just one part of the product, and to promote overconsumption over a long period of time, and she further alleges the how behind which they did it.[51] She also alleges that J.L. overconsumed the products leading to his diabetes diagnosis which provides support for UPF's addictive nature.[52] Further, courts do permit addiction-based claims. *Castano v. Am. Tobacco Co*., 961 F. Supp. 953, 956 (E.D. La. 1997)  *In re Juul Labs, Inc. Mktg. Sales Pracs. & Prods. Liab. Litig.*, 2022 LX 124510 (N.D. Cal. Apr. 29, 2022); *In re Soc. Media Adolescent Addiction/Pers. Inj.*, 754 F.Supp.3d 946, 985 (N.D. Cal. 2024).[53]

### 2. Plaintiff Has Alleged Proximate Causation

Defendants' argument that Plaintiff has not alleged proximate causation is meritless. *Supra* at Section IV(B). Defendants admit that Plaintiff alleges that had Defendants warned J.L. of the

---

[49] The "non-commonly known" dangers of UPF alleged by Plaintiff are the exact dangers for which the comments to Section 402A note a defendant could be held liable – the manufacturing and selling of food containing contaminants and poisons and, therefore, making the food unreasonable dangerous.

[50] Compl. at ¶¶ 12-16, 19, 34, 114, 153-301.

[51] *Id.*

[52] Compl. at ¶¶ 4, 41-42, 44, 594-597, 604-606, 609-610, 612, 614-616, 619-620, 622, 624-626, 629-630, 632, 634-636, 639-640, 642, 644-646, 649-650, 652, 645-656, 659-660, 662, 664-666, 669-670, 672, 674-676, 679-680, 682, 684-686, 689-690, 692, 694-696, 699-700, 702, 711, 713, 715-718.

[53] The two alcohol cases cited by Defendants are distinguishable because they were dismissed based on the common knowledge of the risks of alcohol and addiction. *See Garrison v. Heublein*, 673 F.2d 189, 190-191; *Bruner v. Anheuser-Busch*, 153 F. Supp. 2d 1358, 1360 (S.D. Fla. 2001). Such does not exist here.

increased risks of UPF, he would not have started consuming their UPF, (Def. Br. at 31, quoting ¶ 712), but they claim this is a "formulaic recitation" that cannot be credited. Plaintiff is at a loss for what more Defendants would have her plead to support this allegation, and their citation to *Iqbal* is unhelpful.  Allegations supporting UPF's defective nature and inadequate warning  are identified throughout the Complaint, and Plaintiff alleges that J.L. would not have ingested the UPF had he been warned of these risks, and, thus, he would not have been diagnosed with Type 2 diabetes. This is sufficient pleading under Rule 8(a).

In arguing implausibility, Defendants mislead the Court about what the Complaint alleges on causation. The early literature that is identified goes to Defendants' knowledge of UPF dangers, not J.L.'s knowledge or that of the ordinary consumer; Plaintiff alleges J.L. and ordinary consumers "could not and would not have recognized the potential risks of UPF when used in the manner reasonably foreseeable to each Defendant."[54] Accepting these allegations as true, *Patten*, 2024 U.S. Dist. LEXIS 112424, at *2, Defendants' argument here should be given zero weight.[55]

**E.    <u>Plaintiff has Sufficiently Pled a Cause of Action for Defective Design</u>[56]**

Plaintiff alleges in her Complaint how Defendants' UPF were defectively designed: (1) they were engineered to be addictive and promote overconsumption; (2) they contained dangerous and unnatural combinations of nutrients and dangerous chemical additives and contaminants; (3)

---

[54]  Compl. at ¶ 711, *see also* ¶¶ 390-400, 408-411, 602-603.

[55]  Defendants cite to ¶ 112 of the Complaint and claim Plaintiff acknowledges UPF contain "clear nutritional labels." (Def. Br. at p. 31.) This is false, and defense counsels' statement is the equivalent of an AI hallucination because what Plaintiff actually alleges is: "The practical way to identify UPF is to see if its list of ingredients contains substances that are never or rarely used in kitchens. If so, the product is UPF."

[56] For a design defect claim, a plaintiff must prove that '[t]he danger presented by the product's design was known or should have been known to the manufacturer [or seller]… (2) the product failed to function as expected (as a result of a design characteristic); (3) an alternative design existed that would not impair the product's usefulness or desirability; and (4) the alternative design would have to a reasonable probability prevented the harm." *Franklin*, 2025 LX 172791, a*6-8 (S.D. Miss. Mar. 13, 2025); *see also  Little v. Smith & Nephew, Inc.*, 2015 U.S. Dist. LEXIS 75666, **16-17 (N.D. Miss. Jun. 11, 2015)).

they caused unique health hazards independent of nutrient content, such as Type 2 diabetes; (4) the risks of UPF were not obvious; (6) each Defendant failed to warn of these risks; (7) safer alternative products existed; and (8) they were not providing as much utility as one would expect from product designated as "foods".[57]

Defendants' first argument – that the above allegations are conclusory and lack factual support – is simply wrong. The Complaint, including its detailed Statement of Facts, identifies, *inter alia*, how Defendants engineered their UPF to be addictive and promote overconsumption, and the existing literature supporting UPF causing Type 2 diabetes.[58]

Defendants' case law is distinguishable. In *Mullen v. Bell Helicopter Texron, Inc.*, 2015 U.S. Dist. LEXIS 138771, **5-6 (S.D. Miss. Aug. 17, 2015)(Guirola, J), the plaintiff had admitted deficient design defect allegations. In *Deese v. Immunex Corp.,* 2012 U.S. Dist. LEXIS 17342, at *7-8 (S.D. Miss. Feb. 13, 2012), the plaintiff had impliedly admitted deficient design defect allegations by making passive reference to it in his response. In *Austin v. Bayer Pharms. Corp.*, 2013 U.S. Dist. LEXIS 137480, **15-16 (S.D. Miss. Sept. 25, 2013), the plaintiff had failed to identify what was defective in the design of the product at issue. Here, Plaintiff has alleged the facts which the Courts found lacking in *Mullen*, *Desse* and *Austin*, as discussed above.

Second, Defendants challenge Plaintiff for failing to identify the specific ingredient or process that made the design of their UPF defective, an argument Defendants previously made and that Plaintiff has already addressed. Plaintiff adopts the arguments set forth *supra* in Section IV(A).

Defendants' third argument – that Plaintiff failed to allege a feasible alternative design – is equally baseless. Plaintiff alleges that feasible, safer alternative designs existed that were capable

---

[57] Compl. at ¶ 724.
[58] *Id.* at ¶¶ 105-389.

24

of preventing J.L.'s injuries; the alternative design was actual food (not ultra-processed).[59] Plaintiff further alleges that the ability for Defendants to make non-UPF existed at all relevant times, and they would have met the same, if not more, needs of consumers, such as J.L.[60]

Defendants cite to *Elliott v. El Paso Corp.*, 181 So.3d 263 (Miss. 2015), but there, the action was dismissed at summary judgment because the plaintiff had offered evidence of an addition to the product, not an alternative design. *Id.* at 271-273.  In *Young v. Bristol-Myers Squibb Co.,* 2017 U.S. Dist. LEXIS 24730 (N.D. Miss. Feb. 22, 2017), the proposed alternative design would have placed the drug in an entirely different class that performed different functions.  Here, by contrast, Plaintiff's alternative design – non UPF - is not a proposed addition nor is it a different class of a product that performs different functions; it falls into other food categories of the NOVA classification system (i.e. non-processed or minimally processed foods).[61]  Therefore, Plaintiff's claim is more akin to the Mississippi Supreme Court's decision in *Phillips 66 Co. v. Lofton*, 94 So.2d 1051, 1061-1062 (Miss. 2012), where it was held that viscosifiers and similar products not containing asbestos were feasible, available, alternative designs to viscosifiers containing asbestos.

Thus, Defendants' motion should be denied. *Little*, 2015 U.S. Dist. LEXIS 75666, \*\*16-17; *Franklin*, 2025 LX 172791, \*6-8; *Oliver*, 2020 U.S. Dist. LEXIS 1137589, \*3.

**F.      Plaintiff's Non-MPLA Claims are Not Subsumed by the MPLA**

The Mississippi Supreme Court has held on at least three occasions, including recently in 2025, that Plaintiffs' non-MPLA Claims – negligent misrepresentation, deceptive advertising, fraud, conspiracy, and aiding and abetting – are not subsumed by the MPLA. *King,* 921 So.2d at 271, 273-274 (rejecting the argument that all asserted claims, including fraud, misrepresentation,

---

[59] *Id.* at ¶ 725.
[60] *Id.* at ¶ 724(h). Defendant could also have stopped selling unsafe food. *See e.g. infra* at Section IV(J).
[61] (*Id.* at ¶¶115, 121-122, 135-136, 235, 237, 268, 362, 364, 501.)

deception, and conspiracy to defraud, fell within the MPLA and were thus subject to its inherent-characteristic defense; and also rejecting the defendants' request to adopt Texas' broad reading of "products liability action" to include misrepresentation claims and "any other theory of combination of theories," because the MPLA contains no such definition); *Elliott*, 181 So.3d at 269 (holding that "had the plaintiff alleged claims unrelated to the product's "alleged defects—for instance, fraud, misrepresentation…—then the MPLA would not have applied and common-law principles would have controlled."; *Sunshine Mills, Inc. v. Nutra-Blend, LLC*, 417 So. 3d 133, 138-139 (Miss. 2025)(while the MPLA "casts a wide net", it is "not so wide as to preclude every claim in which a product plays a role"; any argument that the MPLA "encompass[es] all harm traceable to a product, regardless of legal theory, is at odds with the structure of [the MPLA]").

In light of these decisions, Defendants' case law is unhelpful.[62]  Because Plaintiff's non-MPLA claims are based on Defendants' conduct relating to their UPF, and are not subsumed merely because that conduct is traceable to the UPF, Defendants' argument should be rejected.

**G.      Plaintiff's Deceptive Advertising, Fraud, and Negligent Misrepresentation Claims Are Each Sufficiently Pled**

Plaintiff groups her negligent misrepresentation, deceptive advertising, and fraud claims together here only to track the structure of Defendants' motion. The three claims are separate and distinct, though they rely on the substantially similar facts and misconduct laid out in the Complaint's Statement of Facts.

Notably, the legal standard applicable to these actions is not the same. Despite Defendants' contrary claims, Rule 8(a) applies to deceptive advertising and negligent misrepresentation claims,

---

[62] In *Fazard v. Knauf Gips KG*, 2024 U.S. Dist. LEXI 89017, *8 (S.D.Miss. May 13, 2024) the plaintiff had conceded her claims were subsumed. *Id.* at **8-9. In *Young v. Bristol-Myers Squibb Co.*, 2017 U.S. Dist. LEXIS 24730, *11 (N.D.Miss. Feb. 22, 2017), the Court found the plaintiff's misrepresentation and fraud claims subsumed because she appears to have pled them as if seeking to recover for damages caused by a defective product rather than defendants' conduct.

while Rule 9(b) only applies to fraud. *Watson v. First Commonwealth Life Ins. Co.,* 686 F. Supp. 153, 155 (S.D. Miss. 1988); *Johnson v. Enter. Leasing Co.,* 2023 U.S. Dist. LEXIS 191420, at *8 (S.D. Miss. Oct. 25, 2023). But even if Rule 9(b) applied to all claims, Plaintiff has pled "simple, concise, and direct" allegations of the "circumstances constituting [the claims]" sufficient to make relief plausible when taken as true. *Grubbs*, 565 F.3d at 186 (quoting *Twombly*).

Deceptive Advertising.[63] Plaintiff pled every element of her deceptive advertising claim She identified each Defendant as a liable "person" under the statute who, with the intent to sell UPF to J.L. and the public and increase consumption of or demand for it, made, published, circulated, or placed before the public, including J.L., untrue, false, deceptive, and/or misleading assertions, representations, or statements of fact about the UPF.[64] *See* Miss. Code Ann. § 97-23-3. Plaintiff alleges each Defendant made these assertions to J.L. and the public in its packaging, labels, advertisements, promotional materials, websites, and other communications from when he first began ingesting each Defendant's UPF through his diagnosis.[65] As to content, Plaintiff alleges that each Defendant misled J.L. into believing their UPF was safe to consume, even though they knew otherwise.[66] Lastly, for causation, Plaintiff alleges that J.L. was deceived by and reasonably relied on these misleading advertisements, and that had he known the information was untrue, false, deceptive, and/or misleading, he would not have consumed the UPF, and that his Type 2 diabetes was caused by each Defendant's misconduct.[67]

---

[63] Under Miss. Code Ann. § 97-23-3, a defendant can be held civilly liable for untrue, deceptive or misleading advertisements. *Woods v. R.J. Reynolds Tobacco Co.*, 635 F. Supp. 2d 530, 535 (S.D. Miss. 2009). *BC's Heating & Air & Sheet Metal Works, Inc. v. Vermeer Mfg. Co.*, 2012 U.S. Dist. LEXIS 24420, at *18 (S.D. Miss. Feb. 27, 2012).

[64] Compl at ¶¶ 784-790, 792-805.

[65] *Id.* at ¶¶ 793-794, 799.

[66] *Id.* at ¶¶11-21, 28-32, 34, 115, 140-365, 381-385, 390-490, 492, 534-589, 593, 598-600, 607-608, 617-618, 627-628, 637-638, 647-648, 657-658, 667-668, 677-678, 687-688, 697-698, 787-790, 792-798, 800.

[67] *Id.* at ¶¶ 797-799, 801, 803-804.

Negligent Misrepresentation.[68] Plaintiff alleges that each Defendant had a duty to provide J.L. true and accurate information about its UPF; breached that duty by representing the UPF were safe for human consumption with no serious side effects despite knowing otherwise, and by failing to disclose the risks of UPF; made the misrepresentations in the UPF packaging, labeling, and aggressive marketing at all times J.L. consumed its UPF; and engaged in this conduct to induce J.L. to purchase and consume its UPF.[69] Plaintiff also alleges that J.L. relied on each Defendant's representations and nondisclosures, as shown by his consumption of the UPF; had he known the truth, he would not have started consuming the UPF; had he not consumed it over many years, he would not have developed Type 2 diabetes; and his Type 2 diabetes was directly and proximately caused by each Defendant's misrepresentations and concealments.[70]

Fraud.[71] Plaintiff simply, concisely, and directly pleads fraud under Rule 9(b) by alleging: who was responsible – each Defendant;[72] that each Defendant owed J.L. a duty to fully disclose accurate information about UPF safety given its unique and private access to that information; that each had knowledge of the dangers of UPF and the falsity of its representations and concealment; that each breached its duty by representing to J.L., from when he first used the UPF until today—in its packaging, labels, advertisements, promotional materials, websites, and other

---

[68] Negligent misrepresentation claims have four elements: duty, breach, proximate causation, and damages. *Johnson*, 2023 U.S. Dist. LEXIS 191420, *7-8 (citation omitted).

[69] *Id.* at ¶¶ 737-745. *See also fn.* 67 herein for additional allegations.

[70] *Id.* at ¶¶ 596-597 ,746-750.

[71] The elements of a fraudulent representation claim "are: (1) a representation, (2) its falsity, (3) its materiality, (4) the speakers knowledge of its falsity or ignorance its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury. *Watson Labs.,* 241 So. 3d at 584 (citations omitted). Concealment's elements are similar, except that instead of a representation there must be a nondisclosure by a party with a legal duty to disclose. *Daniels v. Crocker*, 235 So. 3d 1, 14 (Miss. 2017)(citations omitted).

[72] *State Indus. v. Hodges*, 919 So.2d 943, 946 (Miss. 2006)(the responsible party can be an entity); *Granny's All. Holdings, Inc. v. Farrow Constr. Specialties, Inc.*, 2012 U.S. Dist. LEXIS 70394 (S.D. Miss. May 21, 2012)(same) *Click v. GM LLC*, 2020 U.S. Dist. LEXIS 104526, at *14 (S.D. Tex. Mar. 27, 2020)(same).

communications—that the UPF were safe for human consumption with no serious side effects despite this knowledge, and by concealing the risks of UPF;[73] that Defendants made these misrepresentations and concealments intending that J.L. rely on them and consume the UPF; that J.L. neither knew nor could have discovered the dangers of UPF with reasonable diligence, owing to each Defendant's fraudulent conduct; that J.L. justifiably relied on that conduct in consuming the UPF, which was material to his decision because, had he known the true facts regarding the dangers of UPF, he would not have consumed UPF; had he not relied on Defendants' fraudulent conduct, he would not have developed Type 2 diabetes; and his Type 2 diabetes was directly and proximately caused by each Defendant's misrepresentations and concealments.[74]

Thus, Plaintiff pled the "who, what, when, where, and how" for all three causes of action. *Click*, 2020 U.S. Dist. LEXIS 104526, at *14-16; *Koon*, 2017 U.S. Dist. LEXIS 21553, *7-8.[75]

Despite sufficiently pleading all three causes of action, Defendants' argue that Plaintiff has failed to allege a false statement, cherry-picking a handful of mostly off-point allegations while ignoring others, and then citing only the portions of those allegations they did choose and omitting the actual misrepresentation. For example, Plaintiff alleges that Defendants represented to J.L. that

---

[73] *Koon v. AZ*, 2017 U.S. Dist. LEXIS 21553, *7-8 (D.Kan. Feb. 15, 2017)(finding "what, where and when" satisfied where the plaintiff had alleged that the representation was that a product was safe and effective and that it was made in reports, press releases, advertising campaigns, television commercials, print ads, direct-to-consumer advertising and the product's label from when he first began using the product until his last use of the product); *Click*, 2020 U.S. Dist. LEXIS 104526, at *14-16; *Hockman v. I-Flow, LLC*, 2017 U.S. Dist. LEXIS 214949, at *8-9 (D. Colo. Dec. 7, 2017); *Johnson-Jack*, 587 F.Supp.3d 957, 973.
[74] Compl. at ¶¶ 596-597, 739-743, 754-779. *See also fn.* 67 herein for additional allegations.
[75] For these reasons, Defendants' case law is distinguishable. *Woods*, 635 F. Supp. 2d at 535-536 (granting summary judgment where plaintiff did not show reliance upon the misrepresentations); *Dixieland Food Stores, Inc. v. Kelly's Big Start, Inc.*, 391 So.2d 633, 636 (Miss. 1980)(dismissing case on appeal of a verdict because there was no evidence of reliance on the erroneous advertisement); *Arnona v. Smith*, 749 So.2d 63, 67 (Miss. 1999)(dismissing case where it was conceded the representation was not made to the plaintiffs); *Williams v. WMX Techs.*, 112 F.3d 175 (5th Cir. 1997)(plaintiff did not allege the when and where); *Courson v. Cordis Corp.*, 2018 U.S. Dist. LEXIS 102814 (N.D. Miss. June 20, 2018)(plaintiff failed to plead the who, what, when and where); *M St. Invs., Inc. v. Zurich Am. Ins. Co.*, 2014 U.S. Dist. LEXIS 42096 (S.D. Miss. Mar. 28, 2014)(same); *Elson v. Black*, 56 F.4th 1002 (5th Cir. 2023)(same).

their UPF was safe for human consumption, and downplayed any risks in their advertisements.[76] Yet Defendants acknowledge only one of these allegations (¶739), but omit the portion alleging each Defendant affirmatively represented "that their UPF was safe for human consumption". (*Cf.* Compl, at ¶739 with Def. Br. at p. 35.)[77] Defendants' gamesmanship should not be allowed. *Thomas v. Tex. Dep't of Pub. Safety*, 2026 LX 264985, at *9 (W.D. Tex. May 22, 2026)(frowning on a defendant's cherry-picking of allegations to the exclusion of others).

Additionally, the falsity of the representations is supported by allegations in the Statement of Facts regarding the risks of UPF and Defendants' excessive marketing.[78] To this end, Plaintiff identified the specific advertisements in the Complaint only as examples of each Defendant's aggressive marketing, as she stated in the Complaint.[79] Defendants' aggressive marketing strategy was aimed at all children, including J.L. and they represented that their UPF were safe for consumption and downplayed any risks in their advertisements as alleged by Plaintiff.[80]

Defendants' next argument is that Plaintiff failed to plead *how* J.L. relied on the misrepresentations. (De. Br. at pp. 37-38.) Yet as identified *supra,* Plaintiff alleges that Defendants represented to J.L. the UPF were safe for human consumption, and concealed their safety risks from him; that J.L. relied on these representations/concealments to his detriment, consuming the UPF believing it safe; and that he would not have consumed it had he known the representations were false. These allegations are not conclusory. But *cf. Click*, 2020 U.S. Dist. LEXIS 104526, at *15-16 (S.D. Tex. Mar. 27, 2020)(accepting conclusory allegations of reliance because a plaintiff's knowledge and state of mind are not subject to Rule 9(b) and can be averred generally).

---

[76] Compl, at ¶¶ 739, 742-743, 754, 761, 789, 795.
[77] Defendants' erroneously identify this paragraph as ¶738 but the portion they do cite is from ¶739.
[78] Compl, at ¶¶ 105-389.
[79] *Id.* at ¶ 325-328, 341, 344-349.
[80] *Id.* at ¶¶ 739, 742-743, 754, 761, 789, 795.

30

Lastly, Defendants' did have a legal duty to disclose what they knew about the risks of UPF. Plaintiff alleges the duty and how it was formed – each Defendant had superior, unique, and private knowledge of the material facts about UPF safety that J.L. could not have discovered with reasonable diligence, such that each Defendant required him to place his trust and confidence in each Defendant, placing them in a position of influence and superiority over him.[81] Defendants' knew their omissions were material, and that J.L. was unaware of the risks of UPF because of their concealment.[82] Plaintiff's allegations are in accord with recent Fifth Circuit precedent that holds a legal duty to disclose exists where there is: (1) a material fact; (2) one party's knowledge that the other is under a mistake as to that fact; and (3) the other party's reasonable expectation that that fact would be disclosed. *Henley v. Biloxi H.M.A., L.L.C.*, 48 F.4th 350, 356 (5th Cir. 2022).[83]

Defendants cite to *Harris v. Brush Engineered Materials*, 2005 U.S. Dist. LEXIS 42348 (S.D. Miss. Feb. 18, 2005)(Guirola, J), but that case is distinguishable because the manufacturer-plaintiff relationship was too attenuated, with at least three companies between them. Here, the relationship is direct, not attenuated. *Woods*, 635 F.Supp. at 538, is also distinguishable because *Henley* had not yet been decided.

Accordingly, Defendants' motions to dismiss should be denied.

---

[81] Compl. at ¶ 755, 756, 770.
[82] *Id.*; *see also* ¶¶ 757-758, 760-767.
[83] This legal duty to disclose is also in line with case law from other states. *See e.g. Elias v. Nissan N. Am., Inc.*, 2026 LX 185059, at *70 (M.D. Tenn. Mar. 31, 2026)(finding that a duty to disclose arises under New York, Michigan and Minnesota law where a defendant has superior knowledge).

**H.       Plaintiff Has Sufficiently Plead Conspiracy[84] and Aiding and Abetting[85]**

Case law supports Mississippi recognizes causes of action for both conspiracy and aiding and abetting, and Plaintiff has sufficiently pled both against the Conspiracy Defendants under Rule 8(a) and Rule 9(b), the latter which is advocated by Defendants. (Def. Br. p, 40.)

Plaintiff's allegations underlying both clams begin with the April 9, 1999 secret meeting attended by the six Conspiracy Defendants and/or their predecessors; Plaintiff alleges that: (1) the meeting led to their agreement to advance their financial interests by expanding the UPF market while deceiving and defrauding the public, including J.L., about the safety and health risks of their UPF; (2) from the conspiracy's inception, the Conspiracy Defendants[86] established an ongoing relationship to accomplish an unlawful objective—actively concealing the truth about the risks of UPF by, among other things: (a) denying and denouncing scientific and public concern about the harms of their UPF; (b) delaying regulatory action to reduce such harms; (c) blaming their victims for such harms; (d) otherwise deflecting blame for such harms; (e) polluting the scientific literature with biased research to confuse the public about such harms; (f) using biased experts and industry front groups to generate doubt about such harms; (g) seeking laws to shield themselves and their co-conspirators from liability for such harms; (h) entering illusory "self-regulation" arrangements to fraudulently assuage concerns about their conduct; and (i) transmitting deceptive, false, and misleading marketing, promotions, and advertising to children through numerous channels; (3)

---

[84] For conspiracy, a plaintiff must prove: "(1) the existence of an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a proximate result." *Multiplan, Inc. v. Holland*, No., 2016 U.S. Dist. LEXIS 96656, at *11-12 (S.D. Miss. July 25, 2016)(Guirola, J.)(citation omitted).

[85] Allegations that a defendant gave substantial assistance or encouragement to another's unlawful conduct causing damages suffice to plead the claim. *See e.g. Jones*, 2018 U.S. Dist. LEXIS 177326, at *5-6; *Mills*, 2021 U.S. Dist. LEXIS 85656, *17-18.

[86] A corporate entity can be a person for a civil conspiracy claim. *Loshelder Prop.*, 2026 LX 24953, *10 (S.D. Miss. Jan. 26, 2026)(citing *Bradley*, 117 So.3d at 339, n. 4).

32

they conspired and gave substantial assistance to each other in doing this to increase consumption

of UPF, particularly by children, such as J.L.; (4) they were successful at inducing J.L. to consume

UPF; and (5) as a result, J.L. now suffers from Type 2 diabetes. [87]

Thus, Plaintiff's allegations here are the exact opposite of the conclusory allegations made

in Defendants' cited cases,[88] and support that an agreement to commit unlawful conduct or lawful

conduct for an unlawful purpose was entered into beginning in April 1999, and the Conspiracy

Defendants gave substantial assistance and encouragement to one another related thereto. *Bradley*

*v. Kelley Bros. Contractors, Inc*, 117 So.3d 331, 339 (Miss. 2013)(citation omitted)(the agreement

"need not extend to all details of the scheme and may be express, implied, or based on evidence

of a course of conduct;" *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 519 (5th Cir.

2018)(citation omitted)("Conspiracies are predominantly proved with circumstantial evidence

since direct evidence of an explicit agreement rarely exists."); *Rex Distrib. Co. v. Anheuser-Busch,*

*LLC*, 271 So. 3d at 445, 455 (Miss. 2019). To this end, Plaintiff has also pled significantly more

than a "description of parallel conduct and independent actions taken by each defendant."[89]

Defendants argue that Mississippi does not recognize an aiding and abetting claim. While

the Mississippi Supreme Court has not yet ruled decisively on this issue, this Court, making well-

reasoned "*Erie* guesses", has held on three separate occasions that it would recognize the claim.

*Dale v. Ala Acquisitions, Inc.*, 203 F.Supp.2d 694, 700-701 (S.D. Miss. 2002)); *Jones v. KPMG*

*LLP*, 2018 U.S. Dist. LEXIS 177326, *5-6 (S.D. Miss. Oct. 15, 2018); *Mills v. Baker*, 2021 U.S.

---

[87] *Id.* at ¶¶ 29-32, 534-589, 757-758, 760-767, 807-843.

[88] *Walker v. Smith,* 2017 U.S. Dist. LEXIS 33102, **7-9 (S.D. Miss. Mar. 8, 2017), *Intent Performance LLC v. Intent Sports & Fitness, LLC*, No. 2:23-cv-86-TBM-RPM, 2025 LX 192289, at *47-52 (S.D. Miss. June 5, 2025), and *Dickens*, 2018 U.S. Dist. LEXIS 186951, **9-12.

[89] *Cf. Goode v. City of Southaven*, 2019 U.S. Dist. LEXIS 128983, **30-34 (N.D. Miss. May 1, 2019); *Midwest Feeders, Inc.*, 886 F.3d at 519; *Gilmer v. McRae*, 355 So.2d 219, 255 (Miss. 2022)

Dist. LEXIS 85656, **14-18 (S.D. Miss. May 5, 2021).[90]

Defendants cite to the bankruptcy case of *Mansfield Oil Co. v. Capitala Fin. Corp.*, 2020 Bankr. LEXIS 1258, at *81-82 (Bankr. S.D. Miss. May 8, 2020) that had relied upon *In re DePuy Orthopedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, 888 F.3d 753, 781 (5th Cir. 2018), and declined to make an "*Erie* guess". *Id.* Defendants fail to cite to this Court's more recent *Mills* decision, which analyzed the same *DePuy* decision, and found it did not prevent the Court from making an educated "*Erie* guess". An important difference between the two cases is that in *Mansfield Oil Co.,* the bankruptcy court cited to the *DePuy* decision to the exclusion of all other Fifth Circuit cases, whereas this Court in *Mills* cited to the *DePuy* decision and multiple other Fifth Circuit cases directing it to make such an educated guess. *Mills*, 2021 U.S. Dist. LEXIS 85656, **14-18.[91] Here, Plaintiff submits, respectfully, that *Mills* is the more well-reasoned decision of the two. Also, after *Mansfield Oil Co.* was decided, the Fifth Circuit's issued its decision in *Henley*, 48 F.4th at 357-258, once again directing courts to make educated "*Erie* guesses".  Accordingly, Mississippi would recognize an aiding-and-abetting claim.[92]

There are two problems with Defendants' next argument – that Plaintiff has failed to plead underlying tortious activity. First, Plaintiff has properly pled underlying torts, as discussed herein. *See Green Hills Dev. Co., LLC v. Oppenheimer Funds, Inc.*, 2020 U.S. Dist. LEXIS 138524, at

---

[90] Other courts have "assumed without deciding that Mississippi would recognize the tort of aiding and abetting civil conspiracy under § 876(b)." *Jones*, 2018 U.S. Dist. LEXIS 177326, at *5 (citing *Fikes v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 815, 822 (N.D. Miss. 2011)); *Dickens,* 2018 U.S. Dist. LEXIS 186951, *11-12 (S.D. Miss. Nov. 1, 2018)(Guirola, J.)

[91] This court in *Mills* cited *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 243 (5th Cir. 2012); *Centennial Ins. Co. v. Ryder Truck Rental*, 149 F.3d 378, 382 (5th Cir. 1998); *Midwest Feeders, Inc.,* 886 F.3d at 515-516; and *Stacy v. Aetna Cas. & Sur. Co*., 484 F.2d 289, 292-293 (5th Cir. 1973)).

[92] In *Landrum v. Livingston Holdings*, LLC, 396 So. 3d 1026 (Miss. 2024), the Mississippi Supreme Court declined to address whether the dismissal of an aiding-and-abetting claim, along with four others, for lack of proof (not pleading) was appropriate because the appellants had failed to cite any legal authority to support their argument. *Id.* at 1047. This does not support it would not recognize the cause of action.

*26-27 (S.D. Miss. Aug. 4, 2020).[93] Second, her claims would still survive without a tort because she alleges facts showing the agreement's purpose was unlawful and/or a lawful purpose pursued unlawfully. *Rex Distrib*, 271 So. 3d at 455 (differentiating between underlying wrong and tort).[94]

Defendants next argue Plaintiff failed to plead an agreement to accomplish an unlawful purpose or a lawful purpose unlawfully. This again rests on semantics rather than a fair reading of the Complaint, because Plaintiff has so pled. *Supra.* Plaintiff has pled the agreement began in April 8, 1999, and the fraud and deceit that resulted from that meeting has continued for 25 years and that overt acts were performed to accomplish the objectives of the agreement as identified in the Complaint.[95] Defendants' attempts to downplay the April 1999 meeting or substitute their own version of events are inappropriate at the pleadings stage.

Regarding this last point, Defendants are again asking this Court to make Plaintiff prove her case at the pleadings stage. They rely upon the Fifth Circuit's affirmation of this Court's trial decision dismissing a conspiracy claim due to lack of proof, *Multiplan, Inc. v. Holland*, 937 F.3d 487, 495 (5th Cir. 2019), but that action's history supports that the pleading standard is not one of proof. *Multiplan, Inc.* 2016 U.S. Dist. LEXIS 96656, at *11 (Guirola J.)(allowing the conspiracy claim to go forward finding sufficient allegations).

Accordingly, because Plaintiff has sufficiently pled her claims for conspiracy and aiding-and-abetting, Defendants' motion should be denied.

## I.    Plaintiffs' Claims Do Not Violate the First Amendment

Defendants' incredible request – that this Court turn the law of tort liability on its head and

---

[93] *Cf. Harris*, 2005 U.S. Dist. LEXIS 42348, *8; *Fikes*, 813 F.Supp.2d at 822.
[94] *See also* Ex. A, *Multiplan, Inc. v. Holland*, 1:14-cv-00315, Court Order dated March 30, 2018 (Guirola, J)(finding post-trial that Holland had not proven an underlying tort had been committee **or** a contract to accomplish an unlawful purpose or a lawful purpose unlawfully); *see also Bradley*, 117 So. 3d at 339-340.
[95] See *fn.* 88 herein.

35

be the first to make the novel finding that food manufacturers can conceal material safety information regarding their food products and instead convey false and misleading information regarding same because they are protected by the First Amendment – should be easily rejected. The Restatement (Second) § 402A, discussed in Section IV(D)(1) *supra*, confirms the history of holding food manufacturers responsible for their defective products and inadequate warnings; food manufacturers are not protected from all liability. Additionally, the Fifth Circuit recently reemphasized that state laws regulating "health and safety are...matters [that] fall within the state's traditional police powers." *Vapor Tech. Ass'n v. Graham*, 2025 U.S. Dist. LEXIS 231497, *10 (S.D.Miss Nov. 25, 2025)(Guirola, J)(citing *AbbVie, Inc. v. Fitch*, 152 F.4th 635, 646 (5th Cir. 2025)). And as the U.S. Supreme Court stated in *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 563-564 (1980), "there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity. The government may ban forms of communication more likely to deceive the public than to inform it. It is only when the communication is neither misleading nor related to unlawful activity, the government's power is more circumscribed." *See also In re R. M. J.*, 455 U.S. 191, 203 (1982)("when the particular content or method of the advertising suggests that it is inherently misleading or when experience has proved that in fact such advertising is subject to abuse, the States may impose appropriate restrictions. Misleading advertising may be prohibited entirely."); *see also In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 25 F. Supp. 2d 837, 848 (N.D. Ill. 1998)("there is no authority for the proposition that the First Amendment provides immunity for failure to warn cases. [To hold otherwise] would ignore decades of tort law, dating back to at least 1892, holding that manufactures can be liable for failing to warn consumers about the dangers of their products." *In re BPA Polycarbonate Plastic*, 2009 WL 3762965, at n.4 (W.D.

36

Mo. Nov. 9, 2009); *Krommenhock*, 2018 U.S. Dist. LEXIS 42938, \*\*7-11.

The cases to which Defendants cite identify a legal standard applicable to state statutes seeking to *mandate* commercial speech.[96] That standard is simply not applicable here, and Defendants have cited no law to the contrary. In fact, the Supreme Court in *Nat'l Inst. of Family and Life Advocates v. Becerra,* 585 U.S. 755, 775 (2018) in addressing a state act mandating commercial speech, noted that it was not questioning "the legality of health and safety warnings long considered permissible". Additionally, the Court contrasted its decision with others in which state tort law had been upheld as permissible. *Id.* at 769-70 (citations omitted). ("[L]ongstanding torts for professional malpractice, for example, 'fall within the traditional purview of state regulation of professional conduct'…that a doctor obtain informed consent to perform an operation is "firmly entrenched in American tort law.")

Here, Plaintiff alleges "longstanding torts" that are "firmly entrenched in American tort law," concern health and safety risks, and do not require Defendants to take sides in a heated political controversy. It the jury's job to determine whether the Defendants adequately warned, and they should be allowed to do so here.

**J.** **Plaintiff's Claims Are Not Preempted by Federal Law**

    **1.** **Defendants' Preemption Arguments are Premature**

Federal preemption is an affirmative defense that a defendant has the burden to plead and prove. *Taylor v. Chase Auto Fin. Corp.*, 850 F. Supp. 2d 637, 642 (N.D. Miss. 2012)(citing *Fisher v. Halliburton*, 667 F.3d 602, 642 (5th Cir. 2012)). It is not plaintiff's burden to plead facts in a complaint that negate affirmative defenses. *Rodriguez*, 2025 U.S. App. Lexis 10170, \*4.

---

[96] *National Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1253, 1282-1283 (9th Cir. 2022); *California Chamber of Com. v. Council for Educ. & Rsch. On Toxics*, 29 F.4th 468, 478-481 (9th Cir. 2022)*; Am. Bev. Ass'n v. Paxton*, No. 6:25-CV-00566, 2026 LX 31333 (W.D. Tex. Feb. 11, 2026).

Defendants admit they lack enough facts to "meaningfully assess[] which asserted theories are preempted," (Def. Br. at pp. 21, 24-25). Further, the arguments Defendants' raise require that discovery from both sides be conducted before this Court can properly rule. As such, Defendants' motion to dismiss on the grounds of preemption should be denied for this reason alone.

### 2. <u>Legal Framework for Preemption</u>

When a "statute 'contains an express pre-emption clause,' courts "'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.'" *Taylor v. JBS Foods USA*, 2025 U.S. Dist. LEXIS 9594, \*9-10 (D.S.D. Jan. 15, 2025)(citing *Commonwealth of Puerto Rico v. Franklin Cal. Tax-Free Tr*., 579 U.S. 115, 125 (2016)). "'Also relevant…is the structure and purpose of the statute as a whole as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law.'" *Id*. (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996) (cleaned up)). Thus, a Court should "consider the [Acts'] text *in toto* as well as its legislative history and purpose." *Id*.

Where more than one reading of a statute is plausible, courts "have a duty to accept the reading that disfavors preemption." *Bates v. Dow Agrosciences,* LLC, 544 U.S. 431, 449 (2005). "In areas of traditional state regulation, [courts] assume that a federal statute has not supplanted state law unless Congress has made such an intention 'clear and manifest.'" *Id*. (citations omitted); *see also Medtronic, Inc*., 518 U.S. at 485 (preemption not favored where "Congress has legislated in a field which the States have traditionally occupied."). State laws regulating "health and safety are...matters [that] fall within the state's traditional police powers." *Vapor Tech. Ass'n,* 2025 U.S. Dist. LEXIS 231497, \*10 (citing *AbbVie, Inc*, 152 F.4th at 646); *Plumley v. Massachusetts*, 155

U.S. 461, 472 (1894)(the States ought to have plenary control over the protection of its people against fraud and deception in the sale of food products).

### 3.      USDA Preemption Does Not Bar Plaintiff's Claims

Defendants only point to three UPF that J.L. consumed among the numerous identified by Plaintiff,[97] when arguing that Plaintiff's claims as to those products are expressly preempted by the Federal Meat Inspection Act ("FMIA") and the Poultry Products Inspection Act ("PPIA")(collectively, "Acts"). (Def. Br. at pp. 20-21.) Thus, Defendants concede that neither FMIA nor PPIA preempts the great majority of Plaintiff's claims.

As to the three UPF Defendants identify (Conagra's Chef Boyardee, Nestle USA's Hot Pockets, and General Mills' Old El Paso), their preemption arguments lack merit.[98] As the parties with the burden, Defendants must prove that Plaintiff's state law claims: (1) impose marking, labeling, packaging, ingredient, premises, facility, and/or operation requirements that (2) are in addition to or different from federal requirements. *See* 21 U.S.C. §§ 467e (PPIA); 678 (FMIA).  Because Plaintiff's state law claims do not, Defendants have failed to meet that burden.

### a.      Neither of the Acts Preempts Plaintiff's Labeling Claims.

The U.S. Department of Agriculture ("USDA")'s Food Safety and Inspection Service ("FSIS") administers the Acts to ensure that covered products do not bear false or misleading markings or labeling. *See* 9 C.F.R. §§ 300.2(a), 317.8(a).  Both Acts' preemption clauses expressly grant the States concurrent jurisdiction to "prevent[] the distribution for human food purposes of any such articles which are adulterated or misbranded." 21 U.S.C. §§ 678; 467e. The Acts' text further shows Congress intended States to assist in regulating meat and poultry. *See* 21 U.S.C. §§

---

[97] Compl., at ¶¶ 605, 615, 625, 635, 645, 655, 665, 675, 685, 695.
[98] Each of these brands includes products that contain poultry or meat and those that do not. As discussed above, Plaintiff is not required to plead in a manner that elucidates every potential affirmative defense that Defendants may raise. Plaintiff's descriptions of the UPF consumed by J.L. are sufficiently pled.

39

451, 602 (poultry and meat will be regulated with the "cooperation of the States."); 21 USC §§ 454(a), 661(a) (noting Congress' policy is to assist in efforts by the State to protect the consuming public from meat and poultry products that are adulterated or misbranded).

The U.S. Supreme Court has held that "a state cause of action that seeks to enforce a federal requirement 'does not impose a requirement that is 'different from, or in addition to,' requirements under federal law." *Id*. at 448; *see also Taylor*, 2025 U.S. Dist. LEXIS 9594, *2 (FMIA does not preempt "state rules that are fully consistent with federal requirements.'") Moreover, "state law need not explicitly incorporate [an act's] standards as an element of a cause of action in order to survive pre-emption." *Bates,* 544 U.S. at 447. Here, Plaintiff's state-law claims impose no different or additional requirements and clearly parallel the Acts.

For example, for Plaintiff's failure to warn claim, Miss. Code Ann. § 11-1-63(i)(2) was enacted to protect consumers from dangerous products that lack adequate safety warnings, and Plaintiff seeks to hold each Defendant liable for violating this statute because its labels are false and misleading as to UPF's health risks.[99] Similarly, Mississippi's deceptive-advertising statute protects consumers from untrue, deceptive, and misleading advertisements in various media, including labeling, Miss. Code. § 97-23- 3, and Plaintiff seeks to hold each Defendant liable for their violation of that statute.[100] These statutes run parallel to and do not contradict the Acts' requirements and were enacted for substantially similar reasons as the Acts– to ensure that products sold to the public are properly labeled in order to protect consumers from harm.

Accordingly, because Plaintiffs' state-law claims are merely the exercise of the concurrent jurisdiction the Acts expressly grant the States, they are not preempted.

---

[99] Compl., at ¶¶ 704-720.
[100] *Id.* at ¶¶ 781-806.

40

Defendants' preemption argument rests on the premise that FSIS approval conclusively proves a label is not false or misleading, so that approval alone suffices. On that view, any state law requiring a label change for being false or misleading would be "in addition to, or different from" the FSIS finding. Because the premise is wrong, the argument fails.

Meat and poultry are misbranded under the Acts when their labeling is false or misleading in any particular. 21 U.S.C §§ 601(n)(1), 453(h)(1). Importantly, only labels that are neither false nor misleading __*and*__ are approved by the Secretary are permitted. 21 U.S.C. §§ 607(d); 457(c).  The Acts' conjunctive language confirms FSIS/Secretary approval alone does not make a label accurate and is not conclusive evidence of preemption; Defendants must also show the labels are not false or misleading. *Taylor*, 2025 U.S. Dist. LEXIS 9594, *2 ("FSIS's approval does not conclusively establish that a label is not false or misleading."). And again, where more than one reading is plausible, courts "have a duty to accept the reading that disfavors preemption," especially "[i]n areas of traditional state regulation." *Bates*, 544 U.S. at 449.

Here, Plaintiff alleges the UPF labels are false and misleading because of their safety risks, and that each Defendant, with knowledge of the safety risks of UPF, defrauded regulators and concealed this safety information from them.[101] Thus, even if Defendants produced evidence of FSIS approval, the inquiry would not end there, because they would have to plead and prove the opposite of Plaintiff's allegations (i.e., that their labels are not false or misleading and that they did not defraud or conceal UPF-safety information from regulators).[102]

As to FSIS approval, Defendants have not met their burden of showing it even occurred, since their motion was brought prematurely. *Supra*. Defendants identify only one label in their

---

[101] *See fn.* 20 herein.

[102] *Cf. Phelps v. Hormel Foods Corp*., 244 F. Supp. 3d 1312, 1319 (S.D. Fa. 2017)(preemption applied where the plaintiff had not alleged that defendant "misrepresented the contents of Products to FSIS.")

motion that *could* apply to Plaintiff's claims, and contend FSIS approved it. (Def. Br. at p. 27). But they produce no evidence showing how it was approved to allow Plaintiff to fully appreciate the manner by which it was approved. Under 9 C.F.R. § 412.2, labels may be approved generically without formal FSIS review, and "the mere existence of the label is insufficient to establish that it was reviewed and approved by FSIS." *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1289 (9th Cir. 2021). Without more evidence from Defendants, Plaintiffs cannot concede FSIS review and/or approval so it remains contested.

For these reasons, Defendants' motion should be denied.

b.      <u>**Neither of the Acts Preempts Plaintiff's Claims Unrelated to the Label**</u>

The Acts' focuses are on the products' labels, packaging, and markings, not on fraudulent or deceptive advertising, statements, or concealments about the products, or on the products' design. *See* 21 U.S.C. §§ 467e, 678. Thus, separate from the label, Defendants have not alleged any such review of their advertising or marketing, nor explained how the Acts would preempt claims unrelated to the label. *See e.g. Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1291 (9th Cir. 2021)(finding defendant's website representations were not reviewed by FSIS, and where websites, advertising and/or marketing are not identical to the label, then label approval will not preempt claims related to same); *see also Thorton v. Kroeger Co.*, 2022 U.S. Dist. LEXIS 29699 (D.N.M Feb. 17, 2022)(holding that FMIA does not preempt New Mexico's Unfair Practices Act).

"[C]ommon sense suggests even 'language that is technically and scientifically accurate on a label can be manipulated in an advertisement to create a message that is false and misleading to the consumer.'" *Organic Consumers Ass'n v. Sanderson Farms, Inc.*, 284 F. Supp. 3d 1005, 1014 (N.D. Cal. 2018)(images, representations, and language in advertising that go beyond what is included on the USDA approved label can be misleading without interfering with USDA authority)(quoting *Sanderson Farms, Inc., v. Tyson Foods, Inc.,* 549 F. Supp. 2d 608, 720 (D. Md.

42

2008)); *see also Animal Legal Def. Fund v. Hormel Foods Corp.*, 258 A.3d 174, 191 (D.C. App. 2021)("States are free to regulate advertisements without regard to whatever terms the USDA approves as appropriate for labeling, so long as they do not encroach on the labeling itself.").

Here, Plaintiff's Complaint is replete with allegations of each Defendant's fraudulent and deceptive conduct outside the purportedly approved labeling, such as overmarketing UPF directly to vulnerable U.S. populations, specifically children and racial and ethnic minorities. Defendants have not claimed FSIS reviewed or approved their advertising for their UPF, and Plaintiff understands it did not; their aggressive marketing strategy surely was not approved either. Plaintiff's design-defect claim likewise rests on allegations entirely outside the label. Defendants thus should not receive preemptive immunity for Plaintiff's claims of liability outside the label.

Accordingly, Defendants have not carried their burden to show FMIA/PPIA preemption applies to any of Plaintiff's "non-label" claims.

### c.    There is No Federal Requirement that Mandate Defendants Sell UPF

Besides protecting the public from misbranded meat and poultry, the Acts also protect against distribution of such products that are "adulterated," and grant the states concurrent jurisdiction over the same. 21 U.S.C. §§ 601(m); 453(g). Under both Acts, meat and poultry may be "adulterated" for various reasons, including, *inter alia*, as a result of being injurious to human health and/or unfit for human consumption. *Id.* FSIS investigation does not extinguish a finding that a meat product is "misbranded" or "adulterated". 21 U.S.C. §§ 601, 458(2), (3).

A state may "regulate what types of meat may be sold for human consumption in the first place" and the FMIA preemption clause "in no way limits their ability to do so. *Empacadora de Carnes v. Curry,* 476 F.3d 326, 333 & n.4; *see also Ass'n des Eleveurs de Canards v. Becerra*, 870 F.3d 1140, 1150 (9th Cir. 2017)("[n]othing in the federal law or its implementing regulations limits a state's ability to regulate the *types* of poultry that may be sold for human consumption. If

43

foie gras is made, producers must, of course, comply with the PPIA. But if a state bans a poultry product like foie gras, there is nothing for the PPIA to regulate.")(emphasis in the original).

Plaintiff's claims here are an example of a manner by which a state can prevent the distribution of misbranded and adulterated products. Defendants could have made a safer non-UPF product or stopped selling UPF entirely, rather than introduce defective and unreasonably dangerous UPF that causes life-threatening health risks like Type 2 diabetes. The Acts permit either approach, and thus have no preemptive effect for this reason as well.

To the extent Defendants argue that "stop selling UPF" is not a viable option, this argument should also be rejected. As the Court held in *Guidry v. Janssen Pharms., Inc.*, 206 F. Supp. 3d 1187, 1208 (E.D. La. 2016), in rejecting a virtually identical argument, "the raison d'être of products liability litigation is to penalize manufacturers who design unreasonably dangerous products *in hopes that they never start selling them*. State products liability law functions as a compliment to federal drug regulations to keep unreasonably dangerous drugs off the market."

In sum, all of Plaintiff's causes of action parallel the Acts' requirement of preventing the misbranding or distribution of adulterated meat and poultry that may be injurious to health or unfit for consumption. They do not fail on account of alleged FSIS label approval. Plaintiff's claims as to meat- or poultry-containing products are thus not preempted." *Bates*, 544 U.S., at 448.

### 4.    The FDCA and NLEA Do Not Expressly Preempt Plaintiff's Claims

Defendants' second preemption argument is that Plaintiff's claims related to UPF other than those involving meat and poultry *may* be preempted by the Food, Drug and Cosmetic Act ("FDCA") as amended by the Nutrition Labeling and Education Act ("NLEA"); but they claim the Complaint is not pled with enough specificity for them to fully articulate their preemption analysis. (Def. Br. at p. 25.) This fails for the same reasons as their first preemption argument.

44

First, Defendants' argument is woefully premature. *Supra.* Second, Plaintiff's claims do not seek to impose "non-identical labeling or ingredient requirements" on Defendants under the NLEA. (Def. Br. at pp. 21, 26.) Because they relate to the safety of food and its components, they are consistent with the NLEA's scheme and exempt from preemption.

For those claims that do implicate labeling and/or ingredient requirements, the NLEA contains an exception to express preemption for claims that relate to food safety and/or component warnings. Specifically, the "NLEA declares that its express preemption provision 'shall not be construed to apply to any requirement respecting a statement in the labeling of food that provides for *a warning concerning the safety of the food or component of the food*,' thereby preserving state warning laws." *Holk v. Snapple Bev. Corp.*, 575 F.3d 329, 338 (3rd Cir. 2009) (quoting Pub. L. No. 101-535, § 6(c)(2))." (emphasis added); *see also Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 617 (4th Cir. 2015)(quoting NLEA, Pub. L. No. 101-535, § 6(c)(2), 104 Stat. 2353, 2364, reprinted in 21 U.S.C.S. § 343-1.). This exception makes sense because "the intent of the NLEA (and the misbranding provisions) was to cover 'only nutrients or substances in food that 'nourish,' and the NLEA 'does not in any way regulate … non-nutritive substances in foods." *Sciortino v. PepsiCo, Inc.*, 108 F. Supp. 3d 780, 801 (N.D. Cal. 2015)(quoting H.R. Rep. No. 101-538, at 7 (1990), reprinted at 1990 U.S.C.C.A.N. 3336, 3337).

Because Plaintiff claims each Defendant should have warned of UPF safety in, among other things, its labels, her claims are expressly exempt from the NLEA's preemption scheme.

To the extent regulatory approval becomes an issue, the FDA has not concluded UPF are safe—because they are not. They are the "leading cause of the diet-related chronic disease

pandemic," which includes Type 2 diabetes.[103] Additionally, Plaintiff's safety claims concern UPF as a final product, not their individual ingredients or processes; it is the overall design of UPF, as developed and manipulated by Defendants, that renders them unsafe. *Supra* at Sections IV(A, B). Her claims center on the fact that UPF as a whole are potentially addictive, are a dangerous *combination* of nutrients and/or additives, cause health risks *independent of nutrient content,* and can cause serious illness. *Id.*

Without reference to any specific UPF J.L. consumed, Defendants throw various possible preemption arguments at the wall, including that the NLEA preempts state-law claims imposing different or additional disclosures as to specific ingredients or ingredients generally recognized as safe ("GRAS").[104] (Def. Br. at p. 25.) Again, Plaintiff's claims do not pertain to any specific ingredient, so this preemption argument should be rejected as well.

### K.      This Court Has Personal Jurisdiction Over Defendant MII[105]

Plaintiff alleges specific jurisdiction only over Defendant MII under Mississippi's long-arm statute, Miss. Code Ann. § 13-3-57,[106] and, therefore, she bears the burden, without an evidentiary hearing, of presenting a *prima facie* case that personal jurisdiction is proper. *Boyd v. Cleara, L.L.C.*, No. 2025 LX 236401, at *5-6 (5th Cir. 2025)(citation omitted). Plaintiff's uncontroverted allegations must be taken as true, and conflicts in the facts resolved in her favor. *Id.* (citation omitted). A court is not to act as a fact finder. *Walk Haydel & Assocs. V. Coastal*

---

[103] Compl. at ¶ 33, n. 30; Baker, et al, *Towards unified global action on ultra-processed foods: understanding commercial determinants, countering corporate power, and mobilising a public health response*, Lancet, Vol. 4, pp. 2703-2726 (Dec. 6. 2025)

[104] Notably, a chemical can have safety concerns even when it is marketed as GRAS. *See* Compl., at ¶ 407.

[105] Defendants correctly note in footnote 18 that Plaintiff and MII have been meeting and conferring regarding substituting MG, LLC as the proper entity. However, the public evidence as discussed herein does not support MII's representations that it has no responsibility for any of the allegations set forth in the Complaint. Separately, Plaintiff continues to meet and confer with Defendant Post Holdings regarding a stipulation to substitute.

[106] Compl. at ¶¶ 2, 53-57.

46

*Power Prod. Co.,* 517 F.3d 235, 241 (5th Cir. 2008).

Mississippi courts have long recognized that a nonresident defendant's "single act [. . .] directed at the forum state . . . can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Joshua Props., LLC v. D1 Sports Holdings, LLC*, 130 So.3d 1089 (Miss. 2014)(citations omitted).[107] Here, Plaintiff has shown MII has the requisite minimum contacts with Mississippi such that it "could reasonably anticipate being haled into court there." *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482 (1984) (quoting *World-Wide Volkswagen Corp. v. Woodson* 444 U.S. 286, 297-298 (1980)).

MII claims that it has not purposefully availed itself of Mississippi's law and has submitted the Declaration of Jamie Learmann East, in which she declares that MII's subsidiary Mondelez Global, LLC ("MG, LLC") is the responsible entity here. There are two glaring problems with the Declaration. First, it is carefully worded and does not actually negate personal jurisdiction. That MII may not directly "develop, manufacture, test, market, or sell" the products at issue does not establish that it played no role in or bore no responsibility for them—including setting brand strategy, approving labeling, directing advertising, or overseeing formulation across the portfolio.

Second, and more fundamentally, public evidence contradicts the Declaration and demonstrates that it is MII, not MG, LLC, that publicly holds itself out as the manufacturer, marketer, and seller of its UPF, including the UPF J.L. ingested in Mississippi. In particular, MII recently filed an intellectual property lawsuit on May 27, 2025, and in the Complaint, MII identifies itself, and not MG, LLC, as the "prominent leader in the cookie and crackers snack

---

[107] Under the 14th Amendment's Due Process clause, specific jurisdiction exists where a defendant purposefully avails itself of the benefits and protections of the forum state and establishes minimum contacts with the state. *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). A critical question to ask is whether haling the defendant into court would "offend traditional notions of fair play and substantial justice." *Id.* at 316.

industry with several universally recognizable and iconic brands sold in the United States including OREO®, WHEAT THINS®, NUTTER BUTTER®, CHIPS AHOY!®, NILLA WAFERS®, RITZ®, and PREMIUM®." (Ex. B. at ¶ 6.) MII also identifies distinctive packaging of its cookies sold in the United States (which would include Mississippi) that it calls "Trade Dress". (*Id.*, *passim.*) MII further alleged that it, not MG, LLC, has spent tens to hundreds of millions of dollars—depending on the cookie—in the last five years alone to advertise and promote its goods in the United States market (which would include Mississippi), and has enjoyed substantial sales and success. (*Id.*, at ¶¶ 17, 30, 43, 55, 69, 82, 95.) Moreover, MII does not identify itself solely as a holding company, although such is alleged as to its co-plaintiff. (*Id.* at p.1, Introduction to Complaint.) The Complaint alone counters the Declaration, but additional information on MII's website[108] and other public online filings[109] does the same.[110]

Ms. East also claims MG, LLC operates independently of MII, that MII has no "direct" control over MG, LLC's day-to-day management, and that MII maintains its own board independent of MG, LLC employees. (East Dec. ¶¶ 10, 13-17; Def. Br. at p. 46.) This is contradicted by the above and by MG, LLC's registration with the Mississippi Secretary of State, which lists five officers and directors who are also MII executive officers as identified on MII's

---

[108]*See* Ex. C. pages from MII's website: MII is "a global snacking powerhouse....bringing you iconic global and local brands such as Oreo, Chips Ahoy!, belVita, Ritz, Triscuit, Wheat Thins, Honey-Maid, Milka, Green & Black's, Swedish Fish, Sour Patch Kids, Halls and much more!" https://www.mondelezinternational.com/united-states/; https://www.mondelezinternational.com/our-brands/; https://www.mondelezinternational.com/;

[109] *See* Ex. D. from MII's linked-in page: MII is "an American multinational confectionery, food, and beverage company…leading the future of snacking with iconic brands such as oreo, belVita, and LUC biscuits…" https://www.linkedin.com/company/mondelezinternational/; Ex. E, pages from MII's 2025 Annual SEC Report holding MII out as a business whose purpose is to "empower people to snack right."

[110] This Court has the authority to take judicial notice of federal court complaints and information contained on the world wide web, specifically on a party's active website. *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 271 n.38 (5th Cir. 2022); *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007).

website.[111] This commingling of employees supports that MII has understated its role over MG, LLC's daily operations as does the fact that the entities share headquarters.[112]

Another questionable statement is that MII operates no facilities and conducts no business in Mississippi. (East Dec. at ¶¶ 7-9.) Public evidence, including a government website, shows otherwise. The Federal Mediation and Conciliation Service, a federal labor agency, listed 160 Interstate Drive, Richland, MS 39218 as an address for MII, not MG, LLC, in 2014—when J.L. was exposed to MII's UPF.[113] Additionally, the Chamber of Commerce and Google Maps also associate the same address with MII as of today.[114] In their Reply on the Motion to Stay, MII claims the address was for property leased by MG, LLC, not MII. (Def. Rep. at pp.9-10 [Doc. 102].) However, no declaration or other evidence was submitted to that effect, and that is not what the public information reveals.

Given all the above, including MII's recently filed Complaint, Plaintiff has presented prima facie evidence of personal jurisdiction over MII for its own conduct directed at Mississippi. Indeed MII's own public admissions directly contradict Ms. East's Declaration.

Even accepting *arguendo* that MII acted only through MG, LLC, MG, LLC's contacts may be imputed to MII where corporate separateness is not respected or the subsidiary acts as the parent's agent or alter ego. *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159–60 (5th Cir.

---

[111] Ex. F and G. https://www.mondelezinternational.com/about-us/leadership/ MII's Executive VP & President of the North America division, Gustavo Valle, is registered as MG LLC's President. (*Id.*) Similarly, Luca Zaramella, Executive VP, COO and CFO of MII and Laura Stein, Executive VP for Corporate and Legal Affairs, General Counsel and Corporate Secretary of MII are both registered as VPs of MG, LLC in Mississippi. MII's Chair and CEO, Dirk Van De Put, and Stephanie Lilak, Executive VP and Chief People Officer, are both registered as members of MG, LLC in Mississippi. (*Id.*)

[112] Ex. H and I, business entity information for both MII and MG, LLC from the Illinois Secretary of State; *see also* https://www.mondelezinternational.com/contact-us/

[113] Ex. J, is spreadsheet information relevant to MII taken from a Notices spreadsheet found at the following web address: https://www.fmcs.gov/resources/documents-and-data/fy-2014-f-7-notices.

[114] Exs. K and L respectively.

1983). *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 339 set forth the *Hargrave* factors for a court to consider and all of these factors support alter ego jurisdiction over MII: (1) MG, LLC is wholly owned by MII; (2) MG, LLC and MII have the same headquarters in Chicago, IL; (3) MG, LLC and MII have common officers and directors; and (4) MII holds itself out to the public as the U.S. manufacturer, marketer, and seller of UPF thus showing that MG, LLC and MII have not observed corporate formalities and that MII exercises authority over general policy and daily UPF operations, despite Ms. East's contrary Declaration.[115] As to separate accounting systems, given MII's recent allegations that it spent tens to hundreds of millions of dollars in the last five years alone advertising and promoting its goods in the U.S., with substantial sales and success, the companies' books are not as separate as Ms. East suggests. In total, the *Hargrave* factors support alter ego and/or agency jurisdiction and MII's cases are distinguishable.[116]

The evidence overwhelmingly supports Plaintiff has made her *prima facie* showing of personal jurisdiction over MII such that its motion should be denied.[117]

## V.    **CONCLUSION**

For the foregoing reasons, this Court should respectfully deny Defendants' motion to dismiss.[118]

---

[115] Ex. M is a Corporate Disclosure Statement filed by MG, LLC on June 12, 2025 in as separate matter; *see also* Exs. C-I.

[116] Unlike in *Sellers v. Volkswagen AG, Volkswagen of Am., Inc.* 2022 U.S. Dist. LEXIS 160015, at \*4 (S.D. Miss, Sept. 6, 2022), Plaintiff has presented prima facie evidence countering MII's Declaration and showing MG, LLC was not the sole entity with decision-making authority, control, and oversight over UPF. *Mullen* is also unhelpful because it involved a case where the defendant had no contact with Mississippi at all. The Court found similarly in *Pitts v. Ford Motor Co.*, 127 F.Supp. 3d 676, 686 (S.D. Miss. 2015).

[117] Plaintiff does not believe discovery on personal jurisdiction is necessary because Plaintiff has made her *prima facie* showing. Nonetheless, should this Court disagree, contemporaneously herewith, Plaintiff is filing a motion for discovery on this issue.

[118] To the extent the Court is inclined to grant any of Defendant's requested relief, Plaintiff respectfully requests that the Court grant any dismissals without prejudice and with leave to amend.

Dated: June 2, 2026

Respectfully submitted,

/s/ Virginia E. Anello
Virginia E. Anello
DOUGLAS & LONDON, P.C.
Admitted Pro Hac Vice
935 Gravier St, Suite 2120
New Orleans, LA 70112
Ph: (212) 566-7500
Email: vanello@douglasandlondon.com

Michael A. London
Douglas & London, P.C.
Admitted Pro Hac Vice
One State St, 35th Floor
New York, NY 10004
Ph: (212) 566-7500
Email: mlondon@douglasandlondon.com

Jim Reeves, Esquire
MS Bar No. 9519
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS   39530
(228) 374-5151 (telephone)
(228) 374-6630 (facsimile)
jrr@rmlawcall.com (email)

Counsel for Plaintiff Tamika Lawton, as Mother a
and Natural Guardian of J.L., A Minor

51

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

Respectfully submitted,

/s/ Virginia E. Anello
Virginia E. Anello
DOUGLAS & LONDON, P.C.
*Admitted Pro Hac Vice*
935 Gravier St, Suite 2120
New Orleans, LA 70112
Ph: (212) 566-7500
Email: vanello@douglasandlondon.com